# United States Court of Appeals for the Federal Circuit

2007-1198, -1348

OLE K. NILSSEN
and GEO FOUNDATION, LTD.,

Plaintiffs-Appellants,

v.

OSRAM SYLVANIA, INC.
and OSRAM SYLVANIA PRODUCTS, INC.,

Defendants-Appellees.

Paul M. Smith, Jenner & Block LLP, of Washington, DC, argued for plaintiffs-appellants. With him on the brief was Marc A. Goldman. Of counsel on the brief were Raymond N. Nimrod, Steven McMahon Zeller and Jonathan Hill, of Chicago, Illinois. Of counsel was Sam Hirsch, of Washington, DC.

Brian D. Sieve, Kirkland & Ellis LLP, of Chicago, Illinois, argued for defendants-appellees. With him on the brief were Garret A. Leach, Kal K. Shah, Serena J. Gondek and Michael I. Cohen.

Appealed from: United States District Court for the Northern District of Illinois

Judge John W. Darrah

# United States Court of Appeals for the Federal Circuit

2007-1198, -1348

OLE K. NILSSEN
and GEO FOUNDATION, LTD.,

Plaintiffs-Appellants,

v.

OSRAM SYLVANIA, INC.
and OSRAM SYLVANIA PRODUCTS, INC.,

Defendants-Appellees.

Appeal from the United States District Court for the Northern District of Illinois in Case No. 01-CV-3585, Judge John W. Darrah.

_____

DECIDED:  June 17, 2008

_____

Before NEWMAN, MAYER and LOURIE, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> LOURIE.  Dissenting opinion filed by <u>Circuit Judge</u> NEWMAN.

LOURIE, <u>Circuit Judge</u>.

Ole K. Nilssen ("Nilssen") and Geo Foundation, Ltd. (collectively "appellants") appeal from the judgment of the U.S. District Court for the Northern District of Illinois denying appellants' motion for expert witness fees pursuant to Federal Rule of Civil Procedure 26(b)(4)(C)(i) and granting a motion for attorney fees to Osram Sylvania, Inc. and Osram Sylvania Products, Inc. (collectively "Osram") pursuant to 35 U.S.C. § 285.

<u>Nilssen v. Osram Sylvania, Inc.</u>, No. 1:01cv3585, 2007 U.S. Dist. LEXIS 5792 (N.D. Ill. Jan. 23, 2007). Because the district court did not abuse its discretion in awarding Osram its attorney fees and denying appellants' expert fees, we affirm.

BACKGROUND

Nilssen is the owner and principal inventor of over 200 patents, many of which concern fluorescent light bulbs and ballasts used in combination with those bulbs. In August 2000, Nilssen brought an action alleging that certain light bulbs and ballasts manufactured and sold by Osram infringed certain of Nilssen's patents. Osram denied the allegations and filed a counterclaim alleging that the patents in suit were invalid. Following a bench trial begun in June 2006, the district court issued a decision holding unenforceable the patents at issue due to inequitable conduct committed by Nilssen in procuring and maintaining those patents. <u>Nilssen v. Osram Sylvania, Inc.</u>, 440 F. Supp. 2d 884 (N.D. Ill. 2006). On appeal, we affirmed. <u>Nilssen v. Osram Sylvania, Inc.</u>, 504 F.3d 1223 (Fed. Cir. 2007). The merits of the inequitable conduct are not now before us, for they have already been adjudicated. Many of the facts pertinent to the court's finding on that issue, however, as well as certain procedural aspects of the inequitable conduct trial, are relevant to the present issue of attorney fees and expert fees and will therefore be recited herein where appropriate.

In their August 2000 complaint, appellants accused Osram of infringing twenty-six of Nilssen's patents. The complaint did not specifically identify which claims were infringed. On February 18, 2003, appellants produced an infringement claim chart applying Nilssen's patents to five accused Osram product lines on a claim limitation-by-claim limitation basis. That claim chart contained fifteen additional Nilssen patents, in

addition to the twenty-six patents included in appellants' complaint. One month later, Osram objected to the inclusion of the additional fifteen patents. The court ordered appellants to submit a revised claim chart containing only the original patents at issue by April 18. On that date, appellants served Osram with amended infringement contentions containing seventy-six asserted claims from twenty of the original twenty-six patents in the complaint. The fifteen Nilssen patents added to the initial claim chart and subsequently removed from the amended claim chart were asserted by appellants in a separate infringement case against Osram, filed in the Northern District of Illinois on May 2, 2003. Although appellants had removed six of the originally-included patents, they did not formally release Osram from liability under those patents at that time. It appears that although the six patents were not formally dropped from the suit at that time, Osram understood that only twenty patents remained at issue; in a July 25, 2003 "Statement Regarding Representative Claims and Product Lines," Osram states that appellants "continue to assert 76 claims from 20 patents."

In November 2003, appellants released their expert's report, which analyzed only fourteen of the original twenty-six patents at issue. Again, at that time, appellants did not formally release Osram from liability on the six patents that were not included in the expert's report.[1] That same month, in their opposition to Osram's motion for summary judgment, appellants stated that they were "willing . . . to reduce the number of patent claims at issue," and that if no agreement as to the reduction of claims was reached

_____

[1] In the Northern District of Illinois, plaintiffs are barred from introducing expert testimony of infringement for patents that are not included in expert reports. Liquid Dynamics Corp. v. Vaughan Co., No. 1:01cv6934, 2004 WL 2260626, at *2 (N.D. Ill. Oct. 1, 2004). Appellants' failure to include six patents in their expert's report likely would have barred appellants from introducing expert testimony on those patents, effectively, if not formally, eliminating them from the infringement suit.

between the parties, then appellants would simply "file a statement of non-liability" concerning the extraneous patents. An attachment accompanying the opposition limited the claims at issue to twenty-five claims from only thirteen patents (one less than in the expert's report).

In July 2005, the court ordered a bench trial on inequitable conduct. Initially scheduled for October, and then December 2005, the trial eventually took place in February 2006. Prior to trial, on October 31, 2005, appellants provided a formal statement of non-liability, reducing the number of patents at issue to twelve, and on December 8 provided a second statement of non-liability reducing the number of patents to eleven. Those eleven patents constituted the patents at issue in the inequitable conduct trial.

In addition to the manner in which Nilssen's patents were asserted and removed from the case, a number of issues relating to appellants' litigation conduct are germane to the present appeal. Before trial began, Osram requested a deposition of Lars Evensen, Nilssen's nephew and the lone officer of Geo Foundation. Appellants insisted that a deposition was unnecessary because Evensen had no relevant knowledge of Geo Foundation's financial practices. They argued that the expense and effort involved in appearing for a deposition in the United States would be an excessive burden on Evensen, who resided and worked in Norway. The court instructed the parties to reach a compromise on the issue, which they did, and Evensen's deposition was taken in Norway.

Both parties exchanged unverified (unsigned) responses to interrogatories before trial. Nilssen's July 9, 2003 responses contained several incorrect filing dates for the

patents in suit. During one of Nilssen's depositions, his attorney informed Osram that some of the filing dates in Nilssen's response were incorrect and indicated, in a handwritten note, the mistakes that he could recall from memory. At trial, Osram sought to impeach Nilssen using his original interrogatory responses, to which appellants objected, arguing that the responses had been corrected at Nilssen's deposition and that the interrogatories had no legal effect as they were not signed by Nilssen. The district court ruled that the responses constituted admissions that were admissible at trial.

At trial, Nilssen claimed that he had relied on his tax counsel in determining that the Geo Foundation was eligible to pay small entity maintenance fees on the patents at issue; Geo Foundation's right to make small entity payments was an important element of the inequitable conduct trial. Osram argued that such reliance amounted to waiver of his attorney-client privilege without proper notice. The district court accordingly allowed Osram to conduct a new deposition of Nilssen's attorney during the time of the trial. Toward the end of the trial, appellants produced a number of documents, several of which related to reimbursements made to Nilssen's attorneys. Osram objected to the inclusion of those documents in evidence due to their untimeliness. The judge declined to rule on the admission of the new documents until Osram had the opportunity to review them, but promised to listen to any objection Osram might bring in the future regarding the admission of the documents.

At the conclusion of the trial, on July 5, 2006, the district court found that Nilssen had engaged in inequitable conduct, thus rendering unenforceable the eleven patents at issue. <u>Nilssen</u>, 440 F. Supp. 2d at 911. The inequitable conduct found by the court

included misclaiming small entity status and improperly paying small entity maintenance fees, failing to disclose related litigation, misclaiming the priority of earlier filing dates, withholding material prior art, and submitting misleading affidavits to the Patent and Trademark Office. Id. at 901-11. On appeal, we affirmed that decision.

After the inequitable conduct trial, Osram filed, inter alia, a motion for reimbursement of attorney fees. Appellants responded with a motion to recover expert deposition fees. The court denied the motion for expert deposition fees, finding that awarding such fees to Nilssen would be a "manifest injustice." Nilssen, 2007 U.S. Dist. LEXIS 5792, at *23. The district court granted Osram's motion for attorney fees, finding that the case was exceptional. Id. The court noted three reasons for finding exceptionality: Nilssen's inequitable conduct, the frivolous nature of the lawsuit, and appellants' litigation misconduct. Id. at *26-*31. The court found that the lawsuit was frivolous because Nilssen "knew or should have known" that the suit was baseless. Id. at *29. In support of the finding of litigation misconduct, the court noted appellants' refusal to allow Evensen's deposition in the United States, the late withdrawal of fifteen of the patents in suit, the belatedly-produced documents, and Nilssen's last minute waiver of the attorney-client privilege. Id. at *28-*30.

Appellants timely appealed the district court's judgment. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

District courts may award reasonable attorney fees to a prevailing party "in exceptional cases." 35 U.S.C. § 285. We review a finding that a case is "exceptional" within the meaning of 35 U.S.C. § 285 for clear error. Forest Labs., Inc. v. Abbot Labs.,

339 F.3d 1324, 1328 (Fed. Cir. 2003). "A finding is clearly erroneous when, despite some supporting evidence, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Id. (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)). Once a case is determined to be exceptional, we review a district court's decision to award attorney fees under an abuse of discretion standard. Id. (citing Cybor Corp. v. FAS Techs., 138 F.3d 1448, 1460 (Fed. Cir. 1998) (en banc)). An abuse of discretion occurs "when [the district court's] decision is based on clearly erroneous findings of fact, is based on erroneous interpretations of the law, or is clearly unreasonable, arbitrary, or fanciful." Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1460 (Fed. Cir. 1998) (en banc). In reviewing a district court's award of expert fees, as with all procedural issues not unique to patent law, we apply the standard of review of the regional circuit. Go Med. Indus. Pty., Ltd. v. Inmed Corp., 471 F.3d 1264, 1272 (Fed. Cir. 2006). The Seventh Circuit reviews the denial of expert fees under Federal Rule of Civil Procedure 26(b)(4)(C) for an abuse of discretion. Gwin v. Am. River Transp. Co., 482 F.3d 969, 975 (7th Cir. 2007).

A.    Exceptional Case and Attorney Fees

On appeal, appellants argue that the district court clearly erred in finding this case exceptional and also that the court abused its discretion in awarding attorney fees. They argue that a finding of inequitable conduct is an insufficient ground for a finding of exceptionality, and further, that conduct must be "egregious" to qualify as exceptional. Appellants claim that Nilssen's conduct did not rise to the level of egregiousness to justify attorney fees. Furthermore, appellants argue that the court's findings of frivolousness and litigation misconduct were clearly erroneous. Finally, they argue that

the attorney fee award was not necessary to prevent "a gross injustice," which they call a requirement for any fee-shifting award under § 285.

In response, Osram notes that the district court's exceptional case decision relied on three separate grounds: inequitable conduct, frivolous lawsuit, and litigation misconduct. Osram argues that there is overwhelming evidence supporting all three grounds; thus the court did not clearly err in finding exceptionality. Furthermore, Osram argues that after finding the case exceptional, the court was within its discretion to award Osram its attorney fees. It would have been grossly unjust in light of Nilssen's conduct, Osram argues, not to award fees in this case.

We agree with Osram that the court did not clearly err in finding this case exceptional, nor did it abuse its discretion in awarding attorney fees. The American Rule provides that courts do not award attorney fees to prevailing parties, absent statutory authority. See Buckhannon Bd. & Care Home v. W. Va. Dept. of Health and Human Res., 532 U.S. 598, 602 (2001). 35 U.S.C. § 285 provides such statutory authority that allows courts to shift fees to the prevailing party in exceptional cases. Appellants first challenge the finding of an exceptional case in an effort to evade the attorney fee provision of 35 U.S.C. § 285.

As a preliminary matter, we agree with appellants that there is no per se rule of exceptionality in cases involving inequitable conduct. There are numerous instances in our case law in which we have affirmed a district court's denial of attorney fees in cases involving inequitable conduct. See e.g., Lighting World, Inc. v. Birchwood Lighting, Inc., 382 F.3d 1354, 1366-67 (Fed. Cir. 2004). However, the lack of a per se exceptionality rule in inequitable conduct cases does not mean that inequitable conduct is insufficient

for a finding of an exceptional case. We have held that inequitable conduct "may constitute a basis for an award of attorney fees under 35 U.S.C. § 285." A.B. Chance Co. v. RTE Corp., 854 F.2d 1307, 1312 (Fed. Cir. 1988). In short, our case law provides wide discretion to district courts; courts may award attorney fees in inequitable conduct cases, but are not required to do so.

Appellants urge this court to reverse the district court's finding of an exceptional case because exceptionality, in their view, requires a showing of fraud, and Nilssen's inequitable conduct was "benign," had little impact on patentability, and was therefore not fraudulent. We disagree with appellants' interpretation of the law. We see no distinction, in either our case law or any statutory authority, between inequitable conduct that is somehow benign, and inequitable conduct that is otherwise, and we resist the urge to make such a distinction here. In fact, it is a contradiction to call inequitable conduct benign. If certain conduct has been held to be inequitable, and we have affirmed the district court's conclusion that it was here, it is hence per se not benign. Likewise, the effect of Nilssen's inequitable conduct on the examination process is not the sole determinant of exceptionality. Even if it were, appellants' argument that Nilssen's inequitable conduct was harmless is not based on any factual findings of the district court. The factual findings underlying the inequitable conduct holding cannot be challenged in this appeal, yet it appears that appellants' argument concerning an exceptional case based on Nilssen's inequitable conduct amounts to little more than an impermissible attempt to reargue the merits of that holding. Accordingly, the district court did not clearly err in finding that appellants' inequitable conduct constituted an exceptional case.

Even if we were to hold that the inequitable conduct conclusion was based on actions that were less egregious than other actions that are more typical of inequitable conduct holdings, we are faced with more than inequitable conduct here. In addition to Nilssen's inequitable conduct, the district court considered appellants' litigation misconduct before and during the inequitable conduct trial as support for its finding of exceptional case. Appellants argue that all of the misconduct mentioned in the district court's opinion—including the Evensen deposition, the withdrawal of patents near trial, Nilssen's advice of counsel defense, appellants' late production of documents, and Nilssen's disavowal of his interrogatory response—amounts to little more than a vigorously tried case. Appellants engaged in numerous tactics which they contend could be described only as legal oversight: Nilssen provided incorrect responses to interrogatories and never filed a formal correction, then attempted to exclude the interrogatories for impeachment purposes because they were not signed; appellants withdrew sixteen of the originally-filed patents from their suit, but did not do so formally until a few months before trial; Nilssen arguably waived his attorney-client privilege during trial without providing notice to Osram; appellants produced documents near the end of trial that had been requested earlier. Appellants urge us to view the evidence of each of those instances as either harmless oversight of legal formalities or permissibly rough litigation tactics.

As an appellate court, we are ill-suited to weigh such evidence. All of the instances described above are context-specific, and the district court found that, taken in context, they amounted to litigation misconduct. There is sufficient evidence in the record for the district court to have concluded that trial misconduct occurred, and we are

not left with the firm conviction that a mistake was committed. Furthermore, it ill behooves an appellate court to overrule a trial judge concerning litigation misconduct when the litigation occurred in front of the trial judge, not the appellate court. Thus, the trial misconduct found by the district court, combined with Nilssen's inequitable conduct (which is uncontestable at this stage), provides sufficient evidence for this court to conclude that the district court did not clearly err in finding this was an exceptional case. The district court dealt with this case and the parties involved for nearly six years and found it to be an exceptional one; we are not left with the strong impression that the trial court clearly erred, and therefore affirm its ruling of an exceptional case.

Finally, Nilssen argues that, even if this is an exceptional case, the district court abused its discretion by granting attorney fees to Osram. Again we disagree. In determining whether to award attorney fees, courts must weigh factors such as degree of culpability, closeness of the questions, and litigation behavior. See Nat'l Presto Indus. Inc. v. W. Bend Co., 76 F.3d 1185, 1197 (Fed. Cir. 1996). The district court did just that in this case: the court found that appellants engaged in litigation misconduct and inequitable conduct that rendered Nilssen's patents unenforceable. Nilssen, 2007 U.S. Dist. LEXIS 5792, at *26, *31. The court weighed the evidence before it and determined that the litigation misconduct and inequitable conduct were sufficient grounds to award fees to Osram to prevent a gross injustice. Appellants committed numerous acts during litigation that the court interpreted as litigation misconduct, findings that we do not hold to be clearly erroneous. Based on appellants' misconduct, and the fact that Nilssen was found to have engaged in inequitable conduct in securing and maintaining his patents, it was not clearly unreasonable or arbitrary to find that

awarding attorney fees was appropriate. The court was within its discretion to award attorney fees to Osram in this case.

The dissent picks through the various flaws in the conduct of the patentee to argue that they do not individually justify the exceptional label placed on the case by the district court judge. Their multiplicity, however, indicates in part why the district judge ruled as he did. The district court, in its original opinion on the merits, described Nilssen's testimony on various issues as "not credible," Nilssen, 440 F.Supp.2d at 904, 909, 910, "unconvincing[]," id. at 904, "unbelievable," id., "without merit," id. at 905, and "unpersuasive," id. at 908. On this basis, and others including litigation misconduct, the district court later found the case to be exceptional.

Finally, and most importantly, the key to the affirmance of the district court in this case is the standard of review—abuse of discretion. Much is said by this court, and directed to it, concerning the importance of deferring to district court judges on matters assigned to their discretion. In reviewing such matters, when we find them to be supported by evidence, and not unreasonable, we must, and do, respect their choices.

B.   Expert Fees

Appellants further argue that the court erred in denying their motion for expert fees under Federal Rule of Civil Procedure 26(b)(4)(C), which provides that:

> Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for the time spent in responding to discovery under this subdivision; and (ii) with respect to discovery obtained under subdivision (b)(4)(B) of this rule the court shall require the party seeking discovery to pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.

Fed. R. Civ. P. 26(b)(4)(C).[2]  The district court held that "awarding those fees to Nilssen would result in manifest injustice" due to appellants' initial filing of twenty-six patents and subsequent withdrawal of fifteen of those patents, and Nilssen's inequitable conduct before the Patent and Trademark Office.  Nilssen, 2007 U.S. Dist. LEXIS 5792 at *23.  The main thrust of appellants' argument is that the court misinterpreted the term "manifest injustice" in Rule 26(b)(4)(C).  They claim that the "manifest injustice" exception is limited to cases in which a party is indigent or otherwise financially unable to pay the fee award.  As Osram is financially able to pay the expert fee award, appellants argue, the court is bound by the text of the rule to award them their requested fees.  According to appellants, the court committed legal error by focusing on Nilssen's conduct, rather than Osram's ability to pay the expert fee award.

Osram disagrees with appellants' interpretation of "manifest injustice," and instead argues that the term is to be given its plain and ordinary meaning, which, according to Osram, is "an outcome that is plainly and obviously unjust."  The district court, according to Osram, did not abuse its discretion in finding that Nilssen's conduct at and before trial makes the prospect of forcing Osram to pay expert fees plainly and obviously unjust.

We agree with Osram.  There is little case law interpreting "manifest injustice" in Rule 26(b)(4)(C).  See Reed v. Binder, 165 F.R.D. 424, 427 (D.N.J. 1996) (noting the lack of case law on this point).  In support of their interpretation of the rule, appellants point to the Advisory Committee Notes to the 1970 amendments to the Federal Rule of

_____

[2]     The version of Fed. R. Civ. P. 26(b)(4)(C) quoted above was superseded by a new version effective December 1, 2007.  The new version merely added stylistic changes.  The version quoted above is the version at issue on appeal, as it was the current version at the time of the district court's decision.

Civil Procedure:

> Even in cases where the court is directed to issue a protective order, it may decline to do so if it finds that manifest injustice would result. Thus, the court can protect, when necessary and appropriate, the interests of an indigent party.

Fed. R. Civ. P. 26, Advisory Committee Notes to 1970 Amendments, 48 F.R.D. 487, 505. Appellants argue that the Advisory Committee Notes limit the manifest injustice exception to cases in which indigent parties are subject to fee awards. While we agree with appellants that the Advisory Committee Notes explicitly encourage courts to reverse the presumption of expert fee payments under Rule 26(b)(4)(C) in cases involving an indigent party, it does not follow that the court's discretion in shifting fees is therefore limited to such cases. Indeed, elsewhere in the Advisory Committee Notes, when commenting on a separate rule containing the "manifest injustice" language, it is apparent that a district court's discretion in shifting fees was not meant to be as limited as appellants suggest:

> [T]he words 'to prevent manifest injustice,' which appeared in the original rule, have been retained. They have the virtue of familiarity and adequately describe the restraint the trial judge should exercise.

Fed. R. Civ. P. 16, Advisory Committee Notes to 1983 Amendments. The Advisory Committee for the Federal Rules of Civil Procedure felt that the term "manifest injustice" was sufficiently familiar to be a useful guide for trial courts. There is nothing in the familiar understanding of the term "manifest injustice" to suggest that it applies only to indigent parties. Thus, it appears that the Advisory Committee intended "manifest injustice" to encompass traditional notions of trial court discretion. In this case, the court felt it to be manifestly unjust to award fees to appellants, whom the court determined had engaged in litigation misconduct and inequitable conduct. Absent our reversal of

those findings, which we reject for the reasons stated in Section A, there is nothing in the Federal Rules of Civil Procedure to suggest that the district court abused its discretion in refusing appellants' request for expert fees. We therefore affirm the denial of appellants' expert fees.

## CONCLUSION

Accordingly, we affirm the district court's grant of attorney fees to Osram pursuant to 35 U.S.C. § 285 and the denial of appellants' motion for expert witness fees.

## AFFIRMED

# United States Court of Appeals for the Federal Circuit

2007-1198,-1348

OLE K. NILSSEN
and GEO FOUNDATION, LTD.,

Plaintiffs-Appellants,

v.

OSRAM SYLVANIA, INC.
and OSRAM SYLVANIA PRODUCTS, INC.,

Defendants-Appellees.

Appeal from the United States District Court for the Northern District of Illinois in Case No. 01-CV-3585, Judge John W. Darrah.

NEWMAN, Circuit Judge dissenting.

The court today promotes unexceptional trial procedures and non-culpable prosecution errors into an "exceptional case" of such severity as to warrant the award of attorney fees. That is not what the statute, or precedent, or policy contemplates. I respectfully dissent.

The premise of the American Rule against fee-shifting is that "one should not be penalized for merely defending or prosecuting a lawsuit." Summit Valley Indus. v. United Bhd. of Carpenters & Joiners, 456 U.S. 717, 724 (1982) (citations omitted); see Mach. Corp. of Am. v. Gullfiber AB, 774 F.2d 467, 471 (Fed. Cir. 1985). For patent cases a combination of history and equity led to 35 U.S.C. §285, a provision intended to permit fee-shifting in egregious situations. In placing §285 in the patent statute, the legislators did "not contemplate[] that the recovery of attorney's fees will become an ordinary thing in patent

suits." Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1328 (Fed. Cir. 2003) (quoting S. Rep. No. 79-1503 (1946)). The statutory authority to award attorney fees was intended to "prevent gross injustice," not to shift the economic balance against the unsuccessful plaintiff. See Machinery Corp., 774 F.2d at 472 ("There is no expressed limitation in this legislative history on the award of fees to a patentee. On the other hand, in connection with an award of fees to an alleged infringer, the [Senate] report mentions prevention of 'a gross injustice.'").

Here, the district court referred to both "litigation misconduct" and "inequitable conduct" as rendering the case "exceptional." The merits of the patents were not reached, leaving unclear the court's designation of the suit as "baseless." My colleagues now hold that when "inequitable conduct" is relied on for a fee award, there is "no distinction, in either our caselaw or any statutory authority, between inequitable conduct that is somehow benign, and inequitable conduct that is otherwise." Maj. op. at 9. To the contrary, that distinction is critical, as reflected in precedent and in the premises of the statute, and must be considered.

This court's prior opinion acknowledged that Nilssen's actions in the PTO were "not per se unreasonable." Nilssen v. Osram Sylvania, 504 F.3d 1223, 1235 (Fed. Cir. 2007). Whether the conduct was reasonable moves to the fore when deciding whether this is an "exceptional case" in terms of section 285 and if so, whether the award of attorney fees is warranted. The panel majority, discussing Nilssen's litigation misconduct, relies on the "manner" in which some of the twenty-six patents that were named in the complaint were removed from the case. The expert report analyzed fourteen of the patents and three of these were later dropped, leaving eleven patents in suit. Although Osram stated that it fully understood which patents were at issue, the panel majority describes as "misconduct" that

not until four months before trial did Nilssen provide a "formal" statement of non-liability as to the unincluded patents. My colleagues give substantial weight to this contribution to the "exceptional case" finding, although there is no showing of prejudice or of violation of local rules or the procedures of trial.

The panel majority also gives weight as litigation misconduct to the fact that Lars Evenson, the president of co-plaintiff Geo Foundation, objected to coming to the United States to be deposed, stating that he had no knowledge of anything at issue in the case; whereby the parties agreed that his deposition would be taken in Norway. The court also designates as litigation misconduct the listing of some incorrect patent filing dates in Nilssen's interrogatory response, which dates were corrected at Nilssen's deposition. The court also deems it litigation misconduct that Nilssen's late waiver of the attorney-client privilege (relating to advice of counsel as to small-entity status) did not leave time for Osram to depose the lawyer until the time of trial.

Accepting that Nilssen's litigation procedures were not perfect, there was no assertion of significance, reliance, deliberateness, bad faith, or prejudice. The acts recited by my colleagues do not produce an "exceptional case" under §285.

My colleagues also rely on the district court's ruling of inequitable conduct that was affirmed by this court in Nilssen, 504 F.3d at 1235-36. I take note that the description of that ruling in the majority opinion is truncated as to the underlying facts. For example, the majority opinion now states that there were "misleading affidavits," maj. op. at 6, whereas the prior decision states that the only flaw in the affidavits was that they did not state the relationship of the affiant. Id. at 1229-30.

The principal ground of the finding of inequitable conduct was Nilssen's payment of small-entity fees for some patents, for which he stated he relied on the advice of counsel,

for both he and his assignee were small entities. This court stated in its earlier opinion that paying small entity fees instead of large entity fees is "not strictly speaking inequitable conduct in the prosecution of a patent, as the patent has already issued if maintenance fees are payable (excepting an issue fee)." Id. at 1231. Another ground of the ruling of "inequitable conduct" was Nilssen's failure to tell the examiner of ongoing litigation with Motorola involving related patents, an error that was shown to be unintentional, of no interest to the examiner, and of no consequence to the allowance of any claims. This court observed that "Failure to cite the Motorola litigation to the PTO may have been an oversight, as perhaps failure to cite prior art might have been." Id. at 1235.

Although this court upheld the district court's ruling of inequitable conduct, this court also stated that Nilssen's arguments on every issue were "not per se unreasonable." Id. The egregiousness of the malefactions on which the finding of inequitable conduct was based are highly relevant to whether this is an "exceptional case" and whether fee shifting is appropriate. My colleagues recognize that a finding of inequitable conduct does not always warrant the award of attorney fees, but decline to take cognizance of the facts underlying that ruling, stating that once inequitable conduct has been found, "there is no distinction." Precedent is otherwise. In Gardco Manufacturing, Inc. v. Herst Lighting Co., 820 F.2d 1209 (Fed. Cir. 1987) this court explained that "it has not been held that every case of proven inequitable conduct must result in an automatic attorney fee award, or that every instance of inequitable conduct mandates an evaluation of the case as 'exceptional.' After the district court determines that a case is exceptional, there remains in every case its freedom to exercise its discretion; informed by the court's familiarity with the matter in litigation and the interests of justice." Id. at 1215 (quoting S.C. Johnson & Son., Inc. v. Carter-Wallace, Inc., 781 F.2d 198, 201 (Fed. Cir. 1986)) (finding inequitable conduct, but

2007-1198,-1348                    4

declining to award attorney fees). In Consolidated Aluminium Corp. v. Foseco International Limited, 910 F.2d 804 (Fed. Cir. 1990) the court affirmed the unenforceability of four patents for inequitable conduct and failure to disclose best mode, but also affirmed that the case was not "exceptional" and affirmed the denial of attorney fees. This court stated that this ruling "accords with our repeated statement that not every case deemed 'exceptional' must result in a fee award." Id. at 815. In J.P. Stevens Co. v. Lex Tex Ltd., 822 F.2d 1047 (Fed. Cir. 1987), this court affirmed the denial of attorney fees although the patent was held unenforceable due to inequitable conduct, citing Rohm & Haas Co. v. Crystal Chemical Co., 736 F.2d 688 (Fed. Cir. 1984) for the position that it is not required or contemplated that "attorneys' fees be awarded to the alleged infringer in an inequitable conduct case 'absent compelling countervailing circumstances' . . . the [purpose of section 285] is to provide discretion where it would be *grossly unjust* that the winner be left to bear the burden of his own counsel which prevailing litigants normally bear." Id. at 1052 (emphasis in original).

Although the panel majority protests that an appellate court does not review the evidence, the district court's finding of the fact of "exceptional case" is reviewed under the clearly erroneous standard, a standard that requires appellate attention to the facts. My colleagues depart from precedent, in holding that the nature of the grounds on which inequitable conduct was found are not relevant to the attorney fee determination.

The precedent of the Federal Circuit is in accord with earlier decisions of the regional circuits, which had viewed §285 in the larger context of fee-shifting principles in general. For example, in Arbrook, Inc. v. American Hospital Supply Corp., 645 F.2d 273, 279 (5th Cir. 1981) the court stated that "A patent applicant who fails to disclose arguably relevant prior art runs the risk that his patent may later be invalidated because of the omission, but he is not liable for fees under §285 unless he is guilty of deliberate misrepresentation or

concealment."  In <u>Landau v. Barter Constr. Co.</u>, 657 F.2d 158 (7th Cir. 1981) the court reviewed the challenged affidavits and found that they did not establish the willfulness or bad faith needed for an award of attorney fees; the court stated that "[t]he statute permits an award of attorneys' fees only in 'exceptional' cases.  Reviewing courts, however, consistently require specific findings by the district court which demonstrate why a case is 'exceptional.'"  <u>Id.</u> at 163.  In <u>Plastic Container Corp. v. Continental Plastics of Oklahoma, Inc.</u>, 708 F.2d 1554, (10th Cir. 1983) the court observed that a case is "exceptional" under §285 if there arises "such misconduct on the part of the losing party as to constitute fraud on the patent office or [conduct] so unfair and reckless as to make it unconscionable for the prevailing party to sustain the expense of counsel," the court finding insufficient support for the "exceptional case" designation.  <u>Id.</u> at 1560-61.

The panel majority stresses that the district court did not view the inventor Nilssen as credible; all of the credibility criticisms relate to the issues on which the district court based its ruling of inequitable conduct in the PTO, issues that this court described as "not per se unreasonable."  <u>Nilssen</u>, 501 F.3d at 1223.  Thus the district court stated that it disbelieved Nilssen's statement that he did not deliberately conceal the relationship of an affiant in affidavits filed in the PTO; the district court stated that it disbelieved Nilssen's statement that he did not deliberately misstate the parentage of some patent applications and did not deliberately withhold some references; the district court stated that it disbelieved Nilssen's statement that he relied on the advice of tax counsel in paying small entity fees; the court criticizing his tardy waiver of the attorney-client privilege; the district court stated that it disbelieved Nilssen's statement that he did not know of his duty to tell the examiner about the Motorola litigation involving other patents.  All of these aspects led to the ruling of inequitable conduct in the PTO.  As I have mentioned, in this court's review of the

inequitable conduct issues we observed that Nilssen's actions were not unreasonable as such and "may have been an oversight." <u>Nilssen</u>, 501 F.3d at 1223. It is inappropriate now to recharacterize this conduct in the PTO as "litigation misconduct." An unexceptional case cannot be made exceptional by double-counting the same infractions.

The panel majority departs from precedent in holding that the nature of "inequitable conduct" is not a factor to be weighed in the attorney fee determination. The court today enlarges the scope of "exceptional case" to include less than egregious aspects of patent prosecution and litigation practice, with no evidence or charge of bad faith or prejudice. Any patent prosecution, and indeed any litigation, is vulnerable in its detail. It is appropriate and necessary to consider the nature of the conduct, in reviewing an attorney fee award, and to limit such award to major infractions, as statute and precedent require. Application of the "exceptional case" provision should be as objectively consistent as its subject matter permits, and in conformity with precedent. From my colleagues' misapplication of law and departure from precedent, I respectfully dissent.