Opinion for the court filed by Circuit Jusge MAYER. Dissenting opinion filed by Circuit Judge GAJARSA.
MAYER, Circuit Judge.
Talteeh Limited and TAL Apparel Limited (collectively “TAL”) appeal the supplemental judgment of the United States District Court for the Western District of Washington reinstating its July 13, 2007, judgment, awarding attorney fees and costs under 35 U.S.C. § 285, and post-judgment interest at the rate allowable at the time of the earlier judgment. Taltech Ltd. v. Esquel Enters. Ltd., 609 F.Supp.2d 1195, 1211 (W.D.Wash.2009) (Taltech). We affirm the award of attorney fees and costs, and reverse the post-judgment interest rate.

BACKGROUND

Talteeh Limited owns United States Patent No. 5,568,779 (“'779 patent”) which is drawn to seams including thermal adhesive to reduce pucker. TAL Apparel Limited, licensee of the '779 patent, manufactures and sells garments, including dress shirts. On April 29, 2004, defendant Esquel Enterprises, Ltd. (“Esquel”), an apparel manufacturer and TAL competitor, filed a complaint seeking a declaratory judgment of non-infringement, and TAL counterclaimed, alleging infringement.
Following a bench trial, the district court concluded that Talteeh inventor John Wong engaged in inequitable conduct during prosecution of the '779 patent before *1328 the United States Patent and Trademark Office (“PTO”) when he did not disclose a raincoat seam that included heat-fusible adhesive tape (undisclosed raincoat seam, “URS”), and when he misrepresented a raincoat seam previously made and sold by TAL (“double top-stitch seam”). Based on these inequitable conduct findings, and a finding of litigation misconduct, the court declared the case exceptional under 35 U.S.C. § 285. The July 13, 2007, final judgment awarded Esquel attorney fees and costs based on the exceptional case finding. TAL appealed.
This court vacated the inequitable conduct determination. TALtech Ltd. v. Esquel Apparel, Inc., 279 Fed.Appx. 974 (Fed.Cir.2008). The attorney fees and costs were also vacated because the exceptional case finding was based, at least in part, on TAL’s inequitable conduct in failing to disclose the URS. The case was remanded for the district court to determine if the URS was cumulative to German Patent No. 1 104 802 (“Robers”). Id. at 977.
On remand, the district court set out its previously presented reasons as three separate and independent bases to support its finding of exceptional case: (1) inequitable conduct in failing to disclose the URS; (2) inequitable conduct in misrepresenting the double top-stitch seam; and (3) abusive litigation tactics. Taltech, 609 F.Supp.2d at 1211. On these bases, the court entered a supplemental final judgment which also imposed interest from the date of the earlier July 13, 2007, judgment. TAL moved under Rule 60(a) of the Federal Rules of Civil Procedure that the judgment specify an interest rate under 28 U.S.C. § 1961 from the date of the new judgment. The motion was denied. TAL appeals both the exceptional case finding and the judgment interest rate. This court has jurisdiction under 28 U.S.C. § 1295(a).

DISCUSSION

District courts may award reasonable attorney fees to a prevailing party “in exceptional cases.” 35 U.S.C. § 285. “ ‘[T]he types of conduct which can form a basis for finding a case exceptional [include] ... inequitable conduct before the P.T.O., [and] misconduct during litigation.’” Hoffmann-La Roche, Inc. v. Invamed, Inc., 213 F.3d 1359, 1365 (Fed.Cir.2000) (quoting Beckman Instruments, Inc. v. LKB Produkter AB, 892 F.2d 1547, 1551 (Fed.Cir.1989)). To establish inequitable conduct the accused infringer must prove by clear and convincing evidence that the patentee withheld material information with intent to deceive the PTO. Kingsdown Med. Consultants, Ltd. v. Hollister Inc., 863 F.2d 867, 872 (Fed.Cir.1988) (en banc to overrule precedent that stated “gross negligence” mandates a finding of deceptive intent). Materiality and intent are questions of fact that we review for clear error. GFI, Inc. v. Franklin Corp., 265 F.3d 1268, 1273 (Fed.Cir.2001). If the materiality and intent requirements are met, the court must then determine whether the cited conduct amounts to inequitable conduct by balancing the levels of materiality and intent; a greater showing of one allows a lesser showing of the other. Larson Mfg. Co. of S.D. v. Aluminart Prods. Ltd., 559 F.3d 1317, 1327 (Fed.Cir.2009) (citing Digital Control, Inc. v. Charles Machine Works, 437 F.3d 1309, 1313 (Fed.Cir.2006)); Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1365 (Fed.Cir.2008) (“[T]he district court must still balance the equities to determine whether the applicant’s conduct before the PTO was egregious enough to warrant holding the entire patent unenforceable.”). “Thus, even if a threshold level of both materiality and intent to deceive are proven by clear and convincing evidence, the court may still decline to render the patent *1329 unenforceable.” Star Scientific, 537 F.3d at 1365.
We review the district court’s ultimate determination of inequitable conduct for an abuse of discretion. Larson Mfg., 559 F.3d at 1327 (citing Digital Control 437 F.3d at 1313). “An abuse of discretion occurs ‘when [the district court’s] decision is based on clearly erroneous findings of fact, is based on erroneous interpretations of the law, or is clearly unreasonable, arbitrary, or fanciful.’ ” Nilssen v. Osram Sylvania, Inc., 528 F.3d 1352, 1357 (Fed.Cir.2008) (quoting Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1460 (Fed.Cir.1998) (en banc)).
We review a finding that a case is exceptional within the meaning of 35 U.S.C. § 285 for clear error. Nilssen, 528 F.3d at 1357. “Once a case is determined to be exceptional, we review a district court’s decision to award attorney fees under an abuse of discretion standard.” Id. (citing Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1328 (Fed.Cir.2003)). “The trial judge’s discretion in the award of attorney fees permits the judge to weigh intangible as well as tangible factors: the degree of culpability of the infringer, the closeness of the question, litigation behavior, and any other factors whereby fee shifting may serve as an instrument of justice.” Nat’l Presto Indus., Inc. v. West Bend Co., 76 F.3d 1185, 1197 (Fed.Cir.1996). “Litigation misconduct and unprofessional behavior are relevant to the award of attorney fees, and may suffice to make a case exceptional.” Sensonics, Inc. v. Aerosonic Corp., 81 F.3d 1566, 1574 (Fed.Cir.1996).
I.
The district court’s first independent ground for finding the case exceptional is TAL’s inequitable conduct in not disclosing the URS. The court concluded that the URS met “the most stringent of the materiality standards,” and also found that the patentee’s “culpability ... is high.” Taltech, 609 F.Supp.2d at 1209. A cumulative reference, however, is not material, see 37 C.F.R. § 1.56(b) (2008), and TAL argues that the URS is cumulative to Robers.
The district court found the URS not cumulative to Robers because: (1) TAL’s translation was inadequate to inform a patent examiner that Robers was material to patentability; (2) the URS had an armhole seam relevant to dependent claims 6, 7, 24, and 25 of TAL’s application, while Robers only described a closure seam; and (3) the URS incorporated Vilene SL33, the adjudicated withheld best mode for the '779 patent, while Robers only disclosed a generic thermoplastic component. Taltech, 609 F.Supp.2d at 1203,1204,1207.
TAL responds to the translation finding by alleging the court erred in striking its comparison of the URS and Robers to the '779 patent claims, and that this comparison demonstrates Robers’ disclosure of more claim elements than the URS. The district court noted two “crucial exceptions,” not “minor,” as the dissent would have it, where TAL’s translation (using “closure” and “seam,” respectively) and Esquel’s translation (using “assembly” and “ribbon,” respectively) employ words with different meanings. Id. at 1203-04. By the use of “closure” instead of “assembly,” the court reasoned that TAL’s “translation limits ... the Robers Patent to seams associated with fastenings, for example, buttonholes, which are specifically discussed therein.” Id. at 1204. Regarding TAL’s use of “seam” instead of “ribbon,” the court said that using “seam” was “nonsensical” because it resulted in a “joint [that] is then itself sewn into a joint between two pieces.” Id. Therefore it concluded that TAL’s submission was so inadequate that “the patent examiner would not have understood the Robers Patent to *1330 teach anything material to patentability of the ‘smooth seam’ method and product claims at issue.” Id.
TAL cites Dayco Products, Inc. v. Total Containment, Inc., 329 F.3d 1358, 1367 (Fed.Cir.2003), and Halliburton Co. v. Schlumberger Technology Corp., 925 F.2d 1435, 1441 (Fed.Cir.1991), as support for admitting its URS-Robers comparison. These cases state the accepted idea that when determining if uncited prior art is cumulative to art before the examiner the trial court must compare both to the claims of the patent-in-suit, but neither involves the adequacy of a translation. Similarly, the dissent emphasizes. an element-by-element comparison of Robers and the URS, which it says results in Robers being more relevant, thereby making the URS cumulative. But the dissent’s underlying premise is flawed. The trial court’s failure to conduct a URS-Robers comparison was based on thoroughly analyzing the differences between the Robers translations. From this the court deemed Robers to not have been before the examiner for all intents and purposes, which obviated the need for a comparison.
TAL also disputes the court’s second reason for finding the URS non-cumulative to Robers, claiming that not applying Robers to armholes inappropriately narrowed its disclosure by focusing solely on the claims to the exclusion of Robers’ broad disclosure. And it objects to the court’s use of an improper dictionary definition for “closure.”
The district court’s emphasis on the term “closure” did not limit Robers to its claims; “closure” appears throughout the Robers specification, not only in the claims. TAL alleges the court improperly focused on the claims based on a single sentence in its opinion stating that “plaintiffs’ translation limits the claims of the Robers Patent.” Taltech, 609 F.Supp.2d at 1204 (emphasis added). Based on this sentence, TAL implies that the court did not consider all of Robers, when it clearly did. Id. at 1205 (“Plaintiffs’ translation of the Robers Patent restricted its scope to ‘closure’ seams.”) (emphasis added).
Further evidence that the court fully considered the Robers specification, in addition to the claims, is its disregard of TAL’s argument that Robers must include armhole seams because the specification contains the phrase “universally applicable.” TAL relies on a sentence taken out of context within the specification that states “[t]he invention is universally applicable.” According to TAL, this sentence alone precludes Robers from being limited to closure seams. The sentence, however, refers to diverse laundering methods, and the court correctly found that it does not “broaden the scope of seams for which the invention might be useful.” Id.
TAL’s argument against the district court’s chosen dictionary meaning also fails. While TAL proffers its own definitions for closure, “drawing together of edges or parts to form a united integument,” and integument, “something that covers or encloses,” these definitions do not alter the outcome. Even if the preferred “closure” definition is more pertinent, TAL does not explain how it would have better informed a patent examiner of Robers’ “universal ] applicability.” Moreover, both of TAL’s arguments for universal applicability are undermined by its own proposed findings[1] that advocated against Robers being applicable to armhole seams. *1331 These proposed findings are ignored by the dissent.
TAL further disputes the court’s finding by alleging that the URS does not disclose an armhole, and that even if it disclosed an armhole seam, it would not have been important to the examiner because he already had references with a variety of clothing seams and thermal adhesives. The finding that the URS is an armhole seam is supported by the evidence. Id. at 1206. Even if it were, a different type of seam, as the dissent seems to think, it remains non-cumulative because Robers is limited to closure seams.
As for the Vilene finding, TAL asserts that (1) the examiner would not have been concerned with the URS’s use of a particular adhesive because the broad claims did not require that degree of specificity; (2) even if he would have been concerned with particular adhesives, Robers’ disclosure of a small genus anticipates the species, or renders the claims obvious; (3) Robers’ disclosure of a pressing temperature — 150 degrees Celsius — teaches specific thermoplastics; and (4) the examiner had many examples of thermoplastic adhesives in various garment seams in other patents.
Regarding the first argument, a patent examiner would have found the URS’s Vilene SL33/armhole combination important because dependent claims 3 and 22 include polyamide, of which Vilene SL33 is a specific example, and the specification states that “[t]he phenomenon of seam pucker is most troubling in armhole seams because of their visible location and the manner of attachment between the shirt body ... and the shirt sleeve.” '779 patent col.3, 11.32-36. Vilene SL33 in an armhole seam is “a new, different combination — previously not disclosed — of elements before the examiner only in separate references,” that is, non-cumulative. Larson Mfg., 559 F.3d at 1333 (citing Molins PLC v. Textron, Inc., 48 F.3d 1172, 1180 (Fed.Cir.1995)).
The dissent reasserts TAL’s argument that the broad claims did not require the URS’s degree of specificity, citing Larson Manufacturing Co. of South Dakota v. Aluminart Products Ltd., 559 F.3d 1317 (Fed.Cir.2009), as support. In that case the claim language did not require a specific type of weather stripping- or a particular retention capability; therefore references with these teachings were immaterial. Id. at 1333. Here, however, claims 3 and 22 include polyamide, and Vilene SL33 is a specific example of a polyamide. This information is material because a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent. Star Scientific, 537 F.3d at 1367. The dissent’s assertion that Vilene SL33 is “wholly irrelevant” because its corresponding limitation is not discussed in the examiner’s reasons for allowance is unsupportable.
TAL’s second and third arguments are wholly inconsistent with its previous assessment of Robers. When distinguishing Robers from the '779 patent, Wong admitted that Robers’ interlining was technologically distinct from polyamide, and unsuitable due to its bias cut and type of adhesive. TAL’s proposed findings at trial[2] also un *1332 dercut its current position that Robers either anticipates or renders obvious the URS’s Vilene SL33 teaching. Taltech, 609 F.Supp.2d at 1207. TAL argued that when Robers issued “there were, perhaps, hundred of materials and resins which could be characterized as ‘thermoplastics.’ This lack of disclosure would severely confound a skilled practitioner.” If a skilled practitioner would be confounded by Robers’ generic disclosure of thermoplastics, it cannot anticipate “the group consisting of polyamide, polyester, olefinic, polyurethane, and ethylene vinylacetate copolymer materials” recited by claims 3 and 22. Id.; '779 patent col.6, 11.63-65; col.8, 11.49-51. TAL’s argument regarding Robers’ disclosure of a pressing temperature fails for similar reasons.
The argument that the examiner had many thermoplastic adhesive examples in various garment seams in other patents is also unpersuasive. The “skilled practitioner” of TAL’s proposed findings would, by definition, have knowledge of the “examples of thermoplastic adhesives ... in the other prior patents,” yet this knowledge was deemed insufficient by TAL when arguing against Robers. We decline to apply a level of ordinary skill higher than that advocated by TAL. Accordingly, the URS’s Vilene SL33 disclosure is not cumulative to Robers because Vilene SL33 is within the polyamide group included in claims 3 and 22, and is not taught by Robers’ recitation of thermoplastic.
The district court also did not err in concluding that TAL acted with the requisite deceptive intent in failing to disclose the URS. Proving intent does not require direct evidence; it can be inferred from indirect and circumstantial evidence. Star Scientific, 537 F.3d at 1366. TAL chose to disclose the double top-stitch seam, presented as “wholly inadequate for dress shirts” in a 1996 amendment, instead of the URS that more closely approximated a high-priced dress shirt seam; and its failure to disclose the URS, which included Vilene SL33, is consistent with its nondisclosure of the Vilene SL33 best mode. “[T]he involved conduct, viewed in light of all the evidence, including evidence indicative of good faith ... indicated] sufficient culpability to require a finding of intent to deceive.” Kingsdown, 863 F.2d .at 876. On these bases, the district court could properly infer that TAL acted with deceptive intent. The dissent insists that Robers was before the examiner and the URS was therefore cumulative, but, again, the district court deemed to the contrary because of the faulty translation.
Moreover, there is no evidence of good faith to counter the evidence of intent. The dissent relies on Wong’s voluntary disclosure of the URS, citing Rothman v. Target, 556 F.3d 1310 (Fed.Cir.2009). But in Rothman this court found no substantial evidence that the patentee had the requisite intent to deceive based on the patentee submitting letters to the PTO discussing the alleged prior art; the holder of the alleged prior art previously participating in negotiations to license rights to the patent prior to issue; the patentee having no sample, photograph, drawing, or description of the alleged prior art to submit to the PTO; the patentee’s attorney having a good faith belief that the alleged prior art was not prior art; and the patentee submitting all the information it did have to the PTO with its petition to make special. 556 F.3d at 1327-28. The dissent also cites Pfizer, Inc. v. Teva Pharmaceuticals USA, Inc., but there, the district court credited the testimony of a named inventor that the reference was significantly different from the invention, noted the PTO’s recognition of the differences, and relied *1333 on Pfizer’s “highly consistent pattern of disclosing references.” 518 F.3d 1353, 1366-67 (Fed.Cir.2008). In stark contrast, Wong disclosed the prior art during a deposition, after the patent issued, despite having sufficient knowledge and ability to disclose it during prosecution; was deemed not credible by the court; and offers no consistent pattern of disclosing references. This is not good faith.
Seeing no clear error in the materiality or deceptive intent analyses of TAL’s failure to disclose the URS, we conclude that the district court did not abuse its discretion in finding inequitable conduct.
II.
The district court’s second independent ground for finding an exceptional case is TAL’s inequitable conduct in misrepresenting the double top-stitch seam. TAL alleges that this argument was “deemed insubstantial by this Court on the first appeal.” To the contrary, this court drew no conclusions about the inequitable conduct arguments surrounding the misrepresentation of the double top-stitch seam. Instead, we “vacate[dj the order of attorney fees under 35 U.S.C. § 285 because the district court based its conclusion that this was an exceptional case at least in part upon its finding of inequitable conduct.” 279 FedAppx. at 977.
“[I]nformation is material to patentability when it is not cumulative to information already of record or being made of record in the application, and ... [i]t refutes, or is inconsistent with, a position the applicant takes in: (i) Opposing an argument of unpatentability relied on by the Office, or (ii) Asserting an argument of patentability.” 37 C.F.R. § 1.56(b) (2008). The inequitable conduct analysis of TAL’s misrepresentations relies on two aspects: It withheld that about five percent of dress shirts sold in the United States by TAL Apparel featured two top stitches in the armhole seam; and it withheld that about five to six percent of the dress shirts sold by TAL Apparel in the early 1990s had overlock stitches. The double top-stitch seam misrepresentation is material because it is not cumulative of other disclosures, and it refutes TAL’s argument that “the appearance of two top stitches protruding through the upper garment ply may be acceptable in the seams of heavy raincoats, but such a configuration is wholly inadequate for most garments, particularly dress shirts.” Similarly, the overloek stitch misrepresentation is material because it also is not cumulative of other disclosures, and it refutes TAL’s statement in its March 11, 1996, amendment that “[although the open edge C can be avoided by incorporating an overlook stitch along the edges, this stitch is unacceptable in most applications, particularly shirts, because it increases the thickness of the seam and is uncomfortable as it rubs a wearer.” The district court did not err in finding these misrepresentations material.
For both misrepresentations, however, the dissent asserts non-materiality. In essence, the dissent says that section 1.56(b) requires the misrepresentation be tied to reasons claims are allowed. There is no such requirement. The statements in TAL’s March 11, 1996, amendment are arguments intended to prevent TAL’s latest disclosure from being applied to dress shirts, and combined with a reference disclosing an overlook stitch. In both cases, TAL is “[a]sserting an argument of patent-ability” as required. It is irrelevant whether these arguments were the ultimate reasons for the patent’s allowance.
Despite knowledge of facts to the contrary, TAL represented to the examiner that “two top stitches” and the “overlock stitch” were, respectively, “wholly inadequate,” and “unacceptable.” The consequence of both representations was that *1334 the examiner would have been led to believe factually inaccurate statements.
The dissent alleges materiality and intent have been conflated. We agree that intent is an element of inequitable conduct requiring support by clear and convincing evidence, but the dissent’s belief that intent requires facts wholly distinct from those establishing materiality is incorrect. TAL’s assertion of unequivocal untruths about a reference, simultaneous with presentation of the reference, in order to minimize the reference’s impact on the examiner shows TAL’s intent to deceive.
The dissent is also troubled by the district court’s statement that Wong “represented to the PTO that he had ‘recently become aware’ of the Double Top-Stitch Seam,” Taltech, 609 F.Supp.2d at 1208, when it was his attorney making the statement. The district court, however, fully grasped the attorney’s decision to be intentionally ambiguous about when Wong was aware of the prior sales, and this misdirection is imputable to Wong, FMC Corp. v. Manitowoc Co., Inc., 835 F.2d 1411, 1415 n. 8 (Fed.Cir.1987) (“[T]he knowledge and actions of applicant’s attorney are chargeable to applicant.”).
Accordingly, it was not clear error for the district court to find deceptive intent in these misrepresentations; and after “balancing] the equities to determine whether the applicant’s conduct before the PTO was egregious enough to warrant holding the entire patent unenforceable,” Star Scientific, 537 F.3d at 1365, in so holding.
III.
The district court’s final independent ground for finding an exceptional case is abusive litigation tactics. TAL argues that its tactics were reasonable under the circumstances and do not support a finding of bad faith. The district court relied on the cumulation of TAL’s dismissal of its damages claim after Esquel conducted discovery and prepared a defense; waiver of a jury request only weeks before trial and after Esquel had extensively prepared; voluntary dismissal with prejudice, in the middle of trial, of five of its claims of infringement in order to avoid responding to Esquel’s motion for entry of judgment pursuant to Fed.R.Civ.P. 52(c); withdrawal of an International Trade Commission complaint shortly before the hearing began; and engaging in similar tactics on remand from this court.
“As an appellate court, we are ill-suited to weigh such evidence. All of the instances described above are context-specific, and the district court found that, taken in context, they amounted to litigation misconduct. There is sufficient evidence in the record for the district court to have concluded that trial misconduct occurred, and we are not left with the firm conviction that a mistake was committed. Furthermore, it ill behooves an appellate court to overrule a trial judge concerning litigation misconduct when the litigation occurred in front of the trial judge, not the appellate court.” Nilssen, 528 F.3d at 1359. The district court presided over this case for over five years, and it had the opportunity to review the litigation conduct after remand, during which it found that TAL’s misconduct continued. Taltech, 609 F.Supp.2d at 1210. The court also found that based on “Mr. Wong’s pattern of changing his testimony to suit the theory du jour and in light of plaintiffs’ shifting contentions ... the record cannot be improved.” Id. The trial court had ample reasons for concluding that TAL’s litigation tactics were abusive.
IV.
Now turning to the interest calculation: “[I]nterest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly aver *1335 age 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding! ] the date of the judgment.” 28 U.S.C. § 1961(a) (2009). We consider the district court’s interest award in accordance with the Ninth Circuit’s standard of review, see GFI, 265 F.3d at 1272, which is de novo, Planned Parenthood v. Am. Coalition of Life Activists, 518 F.3d 1013, 1020 (9th Cir.2008). According to the Ninth Circuit, under Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990), “post-judgment interest may run only from the date of a judgment later determined to be supported by the evidence. It may not run from a legally insufficient judgment.” Planned Parenthood, 518 F.3d at 1021.
TAL contends that the April 10, 2009, judgment (.58% interest rate), is the only legally sufficient judgment, while Esquel argues for the July 13, 2007, judgment (4.99% interest rate). Our May 22, 2008, judgment vacated the district court’s finding of inequitable conduct for failure to disclose the URS, and necessarily the exceptional case ruling because it was based, at least in part, on this inequitable conduct finding. Therefore, the July 13, 2007, judgment was legally insufficient and the April 10, 2009, judgment and its .58% interest rate applies.

CONCLUSION

Accordingly, the judgment of the district court is affirmed in part, and reversed in part, and the case is remanded for further proceedings in accordance with this opinion. Costs to appellees.

AFFIRMED-IN-PART, REVERSED-IN-PART AND REMANDED.

. "Robers does not teach or suggest the subject matter of claim 25 of the '779 Patent because it does not teach or suggest a dress shirt armhole seam," and "Robers only generally discloses use of a thermoplastic strip in assembly seams, but does not specifically state the use of a thermoplastic strip in an armhole seam ... [and was] never intended to apply Figures 4 and 5 to a dress shirt armhole seam.”

. "At the time Robers issued, there were, perhaps, hundreds of materials and resins which could be characterized as 'thermoplastics.' This lack of disclosure would severely confound a skilled practitioner.” "Robers teaches the use of interlinings, which are to be coated with thermoplastic material on one or both sides, but does not disclose whether they are to be applied in powder, pure or solvent forms; for a practitioner of the art seeking to solve the pucker problem in 1994. These are important, operational information.” “Robers mentions the use.of tapes without interlinings, but discloses little if any detail[ ] of the mate *1332 rial composition and properties of desired or workable tapes.”