# United States Court of Appeals for the Federal Circuit

2009-1344


TALTECH LIMITED
and TAL APPAREL LIMITED,

Plaintiffs-Appellants,

v.


ESQUEL ENTERPRISES LIMITED
and ESQUEL APPAREL, INC.,

Defendants-Appellees.


William K. West, Jr., Howrey LLP, of Washington, DC, argued for plaintiffs-appellants. With him on the brief was Pamela S. Kane; Duane Mathiowetz and Farah S. Anthony, of San Francisco, California.

Ronald L. Grudziecki, Drinker Biddle & Reath LLP, of Washington, DC, argued for defendants-appellees. With him on the brief were Gary J. Rinkerman and Jeffrey G. Killian. Of counsel was Michael J. McManus.

Appealed from: United States District Court for the Western District of Washington

Senior Judge Thomas S. Zilly

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2009-1344

TALTECH LIMITED
and TAL APPAREL LIMITED,

Plaintiffs-Appellants,

v.

ESQUEL ENTERPRISES LIMITED
and ESQUEL APPAREL, INC.,

Defendants-Appellees.

Appeal from the United States Court for the Western District of Washington in case no. 04-CV-974, Senior Judge Thomas S. Zilly.

_____

DECIDED: May 12, 2010
_____

Before MAYER, FRIEDMAN, and GAJARSA, <u>Circuit Judges</u>.

Opinion for the court filed by Circuit Judge MAYER. Dissenting opinion filed by Circuit Judge GAJARSA.

MAYER, <u>Circuit Judge</u>.

Taltech Limited and TAL Apparel Limited (collectively "TAL") appeal the supplemental judgment of the United States District Court for the Western District of Washington reinstating its July 13, 2007, judgment, awarding attorney fees and costs under 35 U.S.C. § 285, and post-judgment interest at the rate allowable at the time of the earlier judgment. <u>Taltech Ltd. v. Esquel Enters. Ltd.</u>, 609 F. Supp. 2d 1195, 1211

(W.D. Wash. 2009) (<u>Taltech</u>).   We affirm the award of attorney fees and costs, and reverse the post-judgment interest rate.

*BACKGROUND*

Taltech Limited owns United States Patent No. 5,568,779 ("'779 patent") which is drawn to seams including thermal adhesive to reduce pucker.  TAL Apparel Limited, licensee of the '779 patent, manufactures and sells garments, including dress shirts. On April 29, 2004, defendant Esquel Enterprises, Ltd. ("Esquel"), an apparel manufacturer and TAL competitor, filed a complaint seeking a declaratory judgment of non-infringement, and TAL counterclaimed, alleging infringement.

Following a bench trial, the district court concluded that Taltech inventor John Wong engaged in inequitable conduct during prosecution of the '779 patent before the United States Patent and Trademark Office ("PTO") when he did not disclose a raincoat seam that included heat-fusible adhesive tape (undisclosed raincoat seam, "URS"), and when he misrepresented a raincoat seam previously made and sold by TAL ("double top-stitch seam").  Based on these inequitable conduct findings, and a finding of litigation misconduct, the court declared the case exceptional under 35 U.S.C. § 285. The July 13, 2007, final judgment awarded Esquel attorney fees and costs based on the exceptional case finding.  TAL appealed.

This court vacated the inequitable conduct determination. <u>Taltech Ltd. v. Esquel Apparel, Inc.</u>, 279 F. App'x. 974 (Fed. Cir. 2008).  The attorney fees and costs were also vacated because the exceptional case finding was based, at least in part, on TAL's inequitable conduct in failing to disclose the URS.  The case was remanded for the

district court to determine if the URS was cumulative to German Patent No. 1 104 802 ("Robers"). Id. at 977.

On remand, the district court set out its previously presented reasons as three separate and independent bases to support its finding of exceptional case: (1) inequitable conduct in failing to disclose the URS; (2) inequitable conduct in misrepresenting the double top-stitch seam; and (3) abusive litigation tactics. Taltech, 609 F. Supp. 2d at 1211. On these bases, the court entered a supplemental final judgment which also imposed interest from the date of the earlier July 13, 2007, judgment. TAL moved under Rule 60(a) of the Federal Rules of Civil Procedure that the judgment specify an interest rate under 28 U.S.C. § 1961 from the date of the new judgment. The motion was denied. TAL appeals both the exceptional case finding and the judgment interest rate. This court has jurisdiction under 28 U.S.C. § 1295(a).

## DISCUSSION

District courts may award reasonable attorney fees to a prevailing party "in exceptional cases." 35 U.S.C. § 285. "'[T]he types of conduct which can form a basis for finding a case exceptional [include] . . . inequitable conduct before the P.T.O., [and] misconduct during litigation.'" Hoffman-LaRoche, Inc. v. Invamed, Inc., 213 F.3d 1359, 1365 (Fed. Cir. 2000) (quoting Beckman Instruments, Inc. v. LKB Produkter AB, 892 F.2d 1547, 1551 (Fed. Cir. 1989)). To establish inequitable conduct the accused infringer must prove by clear and convincing evidence that the patentee withheld material information with intent to deceive the PTO. Kingsdown Med. Consultants, Ltd. v. Hollister Inc., 863 F.2d 867, 872 (Fed. Cir. 1988) (en banc to overrule precedent that stated "gross negligence" mandates a finding of deceptive intent). Materiality and intent

are questions of fact that we review for clear error. GFI, Inc. v. Franklin Corp., 265 F.3d 1268, 1273 (Fed. Cir. 2001). If the materiality and intent requirements are met, the court must then determine whether the cited conduct amounts to inequitable conduct by balancing the levels of materiality and intent; a greater showing of one allows a lesser showing of the other. Larson Mfg. Co. of S.D. v. Aluminart Prods. Ltd., 559 F.3d 1317, 1327 (Fed. Cir. 2009) (citing Digital Control, Inc. v. Charles Machine Works, 437 F.3d 1309, 1313 (Fed. Cir. 2006)); Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1365 (Fed. Cir. 2008) ("[T]he district court must still balance the equities to determine whether the applicant's conduct before the PTO was egregious enough to warrant holding the entire patent unenforceable."). "Thus, even if a threshold level of both materiality and intent to deceive are proven by clear and convincing evidence, the court may still decline to render the patent unenforceable." Star Scientific, 537 F.3d at 1365.

We review the district court's ultimate determination of inequitable conduct for an abuse of discretion. Larson Mfg., 559 F.3d at 1327 (citing Digital Control, 437 F.3d at 1313). "An abuse of discretion occurs 'when [the district court's] decision is based on clearly erroneous findings of fact, is based on erroneous interpretations of the law, or is clearly unreasonable, arbitrary, or fanciful.'" Nilssen v. Osram Sylvania, Inc., 528 F.3d 1352, 1357 (Fed. Cir. 2008) (quoting Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1460 (Fed. Cir. 1998) (en banc)).

We review a finding that a case is exceptional within the meaning of 35 U.S.C. § 285 for clear error. Nilssen, 528 F.3d at 1357. "Once a case is determined to be exceptional, we review a district court's decision to award attorney fees under an abuse

of discretion standard." Id. (citing Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1328 (Fed. Cir. 2003)). "The trial judge's discretion in the award of attorney fees permits the judge to weigh intangible as well as tangible factors: the degree of culpability of the infringer, the closeness of the question, litigation behavior, and any other factors whereby fee shifting may serve as an instrument of justice." Nat'l Presto Indus., Inc. v. West Bend Co., 76 F.3d 1185, 1197 (Fed. Cir. 1996). "Litigation misconduct and unprofessional behavior are relevant to the award of attorney fees, and may suffice to make a case exceptional." Sensonics, Inc. v. Aerosonic Corp., 81 F.3d 1566, 1574 (Fed. Cir. 1996).

## I.

The district court's first independent ground for finding the case exceptional is TAL's inequitable conduct in not disclosing the URS. The court concluded that the URS met "the most stringent of the materiality standards," and also found that the patentee's "culpability . . . is high." Taltech, 609 F. Supp. 2d at 1209. A cumulative reference, however, is not material, see 37 C.F.R. § 1.56(b) (2008), and TAL argues that the URS is cumulative to Robers.

The district court found the URS not cumulative to Robers because: (1) TAL's translation was inadequate to inform a patent examiner that Robers was material to patentability; (2) the URS had an armhole seam relevant to dependent claims 6, 7, 24, and 25 of TAL's application, while Robers only described a closure seam; and (3) the URS incorporated Vilene SL33, the adjudicated withheld best mode for the '779 patent, while Robers only disclosed a generic thermoplastic component. Taltech, 609 F. Supp. 2d 1203, 1204, 1207.

TAL responds to the translation finding by alleging the court erred in striking its comparison of the URS and Robers to the '779 patent claims, and that this comparison demonstrates Robers' disclosure of more claim elements than the URS. The district court noted two "crucial exceptions," not "minor," as the dissent would have it, where TAL's translation (using "closure" and "seam," respectively) and Esquel's translation (using "assembly" and "ribbon," respectively) employ words with different meanings. Id. at 1203-04. By the use of "closure" instead of "assembly," the court reasoned that TAL's "translation limits . . . the Robers Patent to seams associated with fastenings, for example, buttonholes, which are specifically discussed therein." Id. at 1204. Regarding TAL's use of "seam" instead of "ribbon," the court said that using "seam" was "nonsensical" because it resulted in a "joint [that] is then itself sewn into a joint between two pieces." Id. Therefore it concluded that TAL's submission was so inadequate that "the patent examiner would not have understood the Robers Patent to teach anything material to patentability of the 'smooth seam' method and product claims at issue." Id.

TAL cites Dayco Products, Inc. v. Total Containment, Inc., 329 F.3d 1358, 1367 (Fed. Cir. 2003), and Halliburton Co. v. Schlumberger Technology Corp., 925 F.2d 1435, 1441 (Fed. Cir. 1991), as support for admitting its URS-Robers comparison. These cases state the accepted idea that when determining if uncited prior art is cumulative to art before the examiner the trial court must compare both to the claims of the patent-in-suit, but neither involves the adequacy of a translation. Similarly, the dissent emphasizes an element-by-element comparison of Robers and the URS, which it says results in Robers being more relevant, thereby making the URS cumulative. But the dissent's underlying premise is flawed. The trial court's failure to conduct a

URS-Robers comparison was based on thoroughly analyzing the differences between the Robers translations. From this the court deemed Robers to not have been before the examiner for all intents and purposes, which obviated the need for a comparison.

TAL also disputes the court's second reason for finding the URS non-cumulative to Robers, claiming that not applying Robers to armholes inappropriately narrowed its disclosure by focusing solely on the claims to the exclusion of Robers' broad disclosure. And it objects to the court's use of an improper dictionary definition for "closure."

The district court's emphasis on the term "closure" did not limit Robers to its claims; "closure" appears throughout the Robers specification, not only in the claims. TAL alleges the court improperly focused on the claims based on a single sentence in its opinion stating that "plaintiffs' translation limits the claims of the Robers Patent." TalTech, 609 F. Supp. 2d at 1204 (emphasis added). Based on this sentence, TAL implies that the court did not consider all of Robers, when it clearly did. Id. at 1205 ("Plaintiffs' translation of the Robers Patent restricted its scope to 'closure' seams.") (emphasis added).

Further evidence that the court fully considered the Robers specification, in addition to the claims, is its disregard of TAL's argument that Robers must include armhole seams because the specification contains the phrase "universally applicable." TAL relies on a sentence taken out of context within the specification that states "[t]he invention is universally applicable." According to TAL, this sentence alone precludes Robers from being limited to closure seams. The sentence, however, refers to diverse laundering methods, and the court correctly found that it does not "broaden the scope of seams for which the invention might be useful." Id.

TAL's argument against the district court's chosen dictionary meaning also fails. While TAL proffers its own definitions for closure, "drawing together of edges or parts to form a united integument," and integument, "something that covers or encloses," these definitions do not alter the outcome. Even if the preferred "closure" definition is more pertinent, TAL does not explain how it would have better informed a patent examiner of Robers' "universal[] applicability." Moreover, both of TAL's arguments for universal applicability are undermined by its own proposed findings[1] that advocated against Robers being applicable to armhole seams. These proposed findings are ignored by the dissent.

TAL further disputes the court's finding by alleging that the URS does not disclose an armhole, and that even if it disclosed an armhole seam, it would not have been important to the examiner because he already had references with a variety of clothing seams and thermal adhesives. The finding that the URS is an armhole seam is supported by the evidence. Id. at 1206. Even if it were a different type of seam, as the dissent seems to think, it remains non-cumulative because Robers is limited to closure seams.

As for the Vilene finding, TAL asserts that (1) the examiner would not have been concerned with the URS's use of a particular adhesive because the broad claims did not require that degree of specificity; (2) even if he would have been concerned with particular adhesives, Robers' disclosure of a small genus anticipates the species, or

---

[1] "Robers does not teach or suggest the subject matter of claim 25 of the '779 Patent because it does not teach or suggest a dress shirt armhole seam," and "Robers only generally discloses use of a thermoplastic strip in assembly seams, but does not specifically state the use of a thermoplastic strip in an armhole seam … [and was] never intended to apply Figures 4 and 5 to a dress shirt armhole seam."

renders the claims obvious; (3) Robers' disclosure of a pressing temperature—150 degrees Celsius—teaches specific thermoplastics; and (4) the examiner had many examples of thermoplastic adhesives in various garment seams in other patents.

Regarding the first argument, a patent examiner would have found the URS's Vilene SL33/armhole combination important because dependent claims 3 and 22 include polyamide, of which Vilene SL33 is a specific example, and the specification states that "[t]he phenomenon of seam pucker is most troubling in armhole seams because of their visible location and the manner of attachment between the shirt body . . . and the shirt sleeve." '779 patent col.3, ll.32-36. Vilene SL33 in an armhole seam is "a new, different combination—previously not disclosed—of elements before the examiner only in separate references," that is, non-cumulative. Larson Mfg., 559 F.3d at 1333 (citing Molins PLC v. Textron, Inc., 48 F.3d 1172, 1180 (Fed. Cir. 1995)).

The dissent reasserts TAL's argument that the broad claims did not require the URS's degree of specificity, citing Larson Manufacturing Co. of South Dakota v. Aluminart Products Ltd., 559 F.3d 1317 (Fed. Cir. 2009), as support. In that case the claim language did not require a specific type of weather stripping or a particular retention capability; therefore references with these teachings were immaterial. Id. at 1333. Here, however, claims 3 and 22 include polyamide, and Vilene SL33 is a specific example of a polyamide. This information is material because a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent. Star Scientific, 537 F.3d at 1367. The dissent's assertion that Vilene SL33 is "wholly irrelevant" because its corresponding limitation is not discussed in the examiner's reasons for allowance is unsupportable.

TAL's second and third arguments are wholly inconsistent with its previous assessment of Robers. When distinguishing Robers from the '779 patent, Wong admitted that Robers' interlining was technologically distinct from polyamide, and unsuitable due to its bias cut and type of adhesive. TAL's proposed findings at trial[2] also undercut its current position that Robers either anticipates or renders obvious the URS's Vilene SL33 teaching. Taltech, 609 F. Supp. 2d at 1207. TAL argued that when Robers issued "there were, perhaps, hundred of materials and resins which could be characterized as 'thermoplastics.' This lack of disclosure would severely confound a skilled practitioner." If a skilled practitioner would be confounded by Robers' generic disclosure of thermoplastics, it cannot anticipate "the group consisting of polyamide, polyester, olefinic, polyurethane, and ethylene vinylacetate copolymer materials" recited by claims 3 and 22. Id.; '779 patent col.6, ll.63-65; col.8, ll.49-51. TAL's argument regarding Robers' disclosure of a pressing temperature fails for similar reasons.

The argument that the examiner had many thermoplastic adhesive examples in various garment seams in other patents is also unpersuasive. The "skilled practitioner" of TAL's proposed findings would, by definition, have knowledge of the "examples of thermoplastic adhesives . . . in the other prior patents," yet this knowledge was deemed insufficient by TAL when arguing against Robers. We decline to apply a level of

---

[2] "At the time Robers issued, there were, perhaps, hundreds of materials and resins which could be characterized as 'thermoplastics.' This lack of disclosure would severely confound a skilled practitioner." "Robers teaches the use of interlinings, which are to be coated with thermoplastic material on one or both sides, but does not disclose whether they are to be applied in powder, pure or solvent forms; for a practitioner of the art seeking to solve the pucker problem in 1994. These are important operational information." "Robers mentions the use of tapes without interlinings, but discloses little if any detail[] of the material composition and properties of desired or workable tapes."

ordinary skill higher than that advocated by TAL. Accordingly, the URS's Vilene SL33 disclosure is not cumulative to Robers because Vilene SL33 is within the polyamide group included in claims 3 and 22, and is not taught by Robers' recitation of thermoplastic.

The district court also did not err in concluding that TAL acted with the requisite deceptive intent in failing to disclose the URS. Proving intent does not require direct evidence; it can be inferred from indirect and circumstantial evidence. Star Scientific, 537 F.3d at 1366. TAL chose to disclose the double top-stitch seam, presented as "wholly inadequate for dress shirts" in a 1996 amendment, instead of the URS that more closely approximated a high-priced dress shirt seam; and its failure to disclose the URS, which included Vilene SL33, is consistent with its non-disclosure of the Vilene SL33 best mode. "[T]he involved conduct, viewed in light of all the evidence, including evidence indicative of good faith . . . indicate[s] sufficient culpability to require a finding of intent to deceive." Kingsdown, 863 F.2d at 876. On these bases, the district court could properly infer that TAL acted with deceptive intent. The dissent insists that Robers was before the examiner and the URS was therefore cumulative, but, again, the district court deemed to the contrary because of the faulty translation.

Moreover, there is no evidence of good faith to counter the evidence of intent. The dissent relies on Wong's voluntary disclosure of the URS, citing Rothman v. Target, 556 F.3d 1310 (Fed. Cir. 2009). But in Rothman this court found no substantial evidence that the patentee had the requisite intent to deceive based on the patentee submitting letters to the PTO discussing the alleged prior art; the holder of the alleged prior art previously participating in negotiations to license rights to the patent prior to

issue; the patentee having no sample, photograph, drawing, or description of the alleged prior art to submit to the PTO; the patentee's attorney having a good faith belief that the alleged prior art was not prior art; and the patentee submitting all the information it did have to the PTO with its petition to make special. 556 F.3d at 1327-28. The dissent also cites Pfizer, Inc. v. Teva Pharmaceuticals USA, Inc., but there, the district court credited the testimony of a named inventor that the reference was significantly different from the invention, noted the PTO's recognition of the differences, and relied on Pfizer's "highly consistent pattern of disclosing references." 518 F.3d 1353, 1366-67 (Fed. Cir. 2008). In stark contrast, Wong disclosed the prior art during a deposition, after the patent issued, despite having sufficient knowledge and ability to disclose it during prosecution; was deemed not credible by the court; and offers no consistent pattern of disclosing references. This is not good faith.

Seeing no clear error in the materiality or deceptive intent analyses of TAL's failure to disclose the URS, we conclude that the district court did not abuse its discretion in finding inequitable conduct.

II.

The district court's second independent ground for finding an exceptional case is TAL's inequitable conduct in misrepresenting the double top-stitch seam. TAL alleges that this argument was "deemed insubstantial by this Court on the first appeal." To the contrary, this court drew no conclusions about the inequitable conduct arguments surrounding the misrepresentation of the double top-stitch seam. Instead, we "vacate[d] the order of attorney fees under 35 U.S.C. § 285 because the district court based its

conclusion that this was an exceptional case at least in part upon its finding of inequitable conduct."  279 Fed. App'x. at 977.

"[I]nformation is material to patentability when it is not cumulative to information already of record or being made of record in the application, and . . . [i]t refutes, or is inconsistent with, a position the applicant takes in: (i) Opposing an argument of unpatentability relied on by the Office, or (ii) Asserting an argument of patentability."  37 C.F.R. § 1.56(b) (2008).  The inequitable conduct analysis of TAL's misrepresentations relies on two aspects:  It withheld that about five percent of dress shirts sold in the United States by TAL Apparel featured two top stitches in the armhole seam; and it withheld that about five to six percent of the dress shirts sold by TAL Apparel in the early 1990s had overlock stitches.  The double top-stitch seam misrepresentation is material because it is not cumulative of other disclosures, and it refutes TAL's argument that "the appearance of two top stitches protruding through the upper garment ply may be acceptable in the seams of heavy raincoats, but such a configuration is wholly inadequate for most garments, particularly dress shirts."  Similarly, the overlock stitch misrepresentation is material because it also is not cumulative of other disclosures, and it refutes TAL's statement in its March 11, 1996, amendment that "[a]lthough the open edge C can be avoided by incorporating an overlock stitch along the edges, this stitch is unacceptable in most applications, particularly shirts, because it increases the thickness of the seam and is uncomfortable as it rubs a wearer."  The district court did not err in finding these misrepresentations material.

For both misrepresentations, however, the dissent asserts non-materiality.  In essence, the dissent says that section 1.56(b) requires the misrepresentation be tied to

reasons claims are allowed. There is no such requirement. The statements in TAL's March 11, 1996, amendment are arguments intended to prevent TAL's latest disclosure from being applied to dress shirts, and combined with a reference disclosing an overlock stitch. In both cases, TAL is "[a]sserting an argument of patentability" as required. It is irrelevant whether these arguments were the ultimate reasons for the patent's allowance.

Despite knowledge of facts to the contrary, TAL represented to the examiner that "two top stitches" and the "overlock stitch" were, respectively, "wholly inadequate," and "unacceptable." The consequence of both representations was that the examiner would have been led to believe factually inaccurate statements.

The dissent alleges materiality and intent have been conflated. We agree that intent is an element of inequitable conduct requiring support by clear and convincing evidence, but the dissent's belief that intent requires facts wholly distinct from those establishing materiality is incorrect. TAL's assertion of unequivocal untruths about a reference, simultaneous with presentation of the reference, in order to minimize the reference's impact on the examiner shows TAL's intent to deceive.

The dissent is also troubled by the district court's statement that Wong "represented to the PTO that he had 'recently become aware' of the Double Top-Stitch Seam," Taltech, 609 F. Supp. 2d at 1208, when it was his attorney making the statement. The district court, however, fully grasped the attorney's decision to be intentionally ambiguous about when Wong was aware of the prior sales, and this misdirection is imputable to Wong, FMC Corp. v. Manitowoc Co., Inc., 835 F.2d 1411,

1415 n.8 (Fed. Cir. 1987) ("[T]he knowledge and actions of applicant's attorney are chargeable to applicant.").

Accordingly, it was not clear error for the district court to find deceptive intent in these misrepresentations; and after "balanc[ing] the equities to determine whether the applicant's conduct before the PTO was egregious enough to warrant holding the entire patent unenforceable," Star Scientific, 537 F.3d at 1365, in so holding.

## III.

The district court's final independent ground for finding an exceptional case is abusive litigation tactics. TAL argues that its tactics were reasonable under the circumstances and do not support a finding of bad faith. The district court relied on the cumulation of TAL's dismissal of its damages claim after Esquel conducted discovery and prepared a defense; waiver of a jury request only weeks before trial and after Esquel had extensively prepared; voluntary dismissal with prejudice, in the middle of trial, of five of its claims of infringement in order to avoid responding to Esquel's motion for entry of judgment pursuant to Fed. R. Civ. P. 52(c); withdrawal of an International Trade Commission complaint shortly before the hearing began; and engaging in similar tactics on remand from this court.

"As an appellate court, we are ill-suited to weigh such evidence. All of the instances described above are context-specific, and the district court found that, taken in context, they amounted to litigation misconduct. There is sufficient evidence in the record for the district court to have concluded that trial misconduct occurred, and we are not left with the firm conviction that a mistake was committed. Furthermore, it ill behooves an appellate court to overrule a trial judge concerning litigation misconduct

when the litigation occurred in front of the trial judge, not the appellate court." Nilssen, 528 F.3d at 1359. The district court presided over this case for over five years, and it had the opportunity to review the litigation conduct after remand, during which it found that TAL's misconduct continued. Taltech, 609 F. Supp. 2d at 1210. The court also found that based on "Mr. Wong's pattern of changing his testimony to suit the theory du jour and in light of plaintiffs' shifting contentions . . . the record cannot be improved." Id. The trial court had ample reasons for concluding that TAL's litigation tactics were abusive.

IV.

Now turning to the interest calculation: "[I]nterest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." 28 U.S.C. § 1961(a) (2009). We consider the district court's interest award in accordance with the Ninth Circuit's standard of review, see GFI, 265 F.3d at 1272, which is de novo, Planned Parenthood v. Am. Coalition of Life Activists, 518 F.3d 1013, 1020 (9th Cir. 2008). According to the Ninth Circuit, under Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827 (1990), "post-judgment interest may run only from the date of a judgment later determined to be supported by the evidence. It may not run from a legally insufficient judgment." Planned Parenthood, 518 F.3d at 1021.

TAL contends that the April 10, 2009, judgment (.58% interest rate), is the only legally sufficient judgment, while Esquel argues for the July 13, 2007, judgment (4.99% interest rate). Our May 22, 2008, judgment vacated the district court's finding of

inequitable conduct for failure to disclose the URS, and necessarily the exceptional case ruling because it was based, at least in part, on this inequitable conduct finding. Therefore, the July 13, 2007, judgment was legally insufficient and the April 10, 2009, judgment and its .58% interest rate applies.

## *CONCLUSION*

Accordingly, the judgment of the district court is affirmed in part, and reversed in part, and the case is remanded for further proceedings in accordance with this opinion.

Costs to appellees.

<u>AFFIRMED- IN- PART, REVERSED- IN- PART AND REMANDED</u>

# United States Court of Appeals for the Federal Circuit

2009-1344

TALTECH LIMITED
and TAL APPAREL LIMITED,

Plaintiffs-Appellants,

v.

ESQUEL APPAREL, INC.,
and ESQUEL ENTERPRISES LIMITED,

Defendants-Appellees.

Appeal from the United States District Court for the Western District of Washington in Case No. 04-CV-974, Senior Judge Thomas S. Zilly.

GAJARSA, Circuit Judge, dissenting.

This case exemplifies the ongoing pandemic of baseless inequitable conduct charges that pervade our patent system. For the reasons stated below, I respectfully dissent from the majority opinion.

Defendants' inequitable conduct claim rests on a handmade drawing that the inventor, John Wong, sketched on a piece of paper during his deposition. Defendants' counsel requested that Wong draw the prior art that "inspired" him to experiment in making pucker-free seams in dress shirts. In response, he sketched a prior art seam used to waterproof raincoats manufactured in the TAL factory. During litigation, Wong's drawing was labeled the "Undisclosed Raincoat Seam" ("URS"). After a bench trial, the district court found that Wong committed fraud on the U.S. Patent and Trademark Office ("PTO") because he failed to disclose the URS as the "inspiration" for his invention.

We vacated the inequitable conduct finding on the first appeal because there is no legal requirement that an inventor disclose the "inspiration" for his invention to the PTO. We remanded the case for a proper substantive inquiry into whether the URS was merely cumulative of the prior art on record with the PTO. Taltech Ltd. v. Esquel Enters., Inc., 279 F. App'x 974, 977 (Fed. Cir. May 22, 2008) ("If the undisclosed raincoat seam was merely cumulative to Robers, then no inequitable conduct lies in its nondisclosure.").

On remand, the district court again found that Wong had committed inequitable conduct based on his failure to disclose the URS, but did so based on a flawed cumulativeness inquiry. The district court erroneously limited the teachings of both the URS and the Robers reference in order to render them non-cumulative prior art. Had the district court properly interpreted the teachings of both references, it would have found that the URS was merely cumulative of Robers.

The district court also improperly inferred intent to deceive from the materiality of the non-disclosed reference and several statements Wong made to the PTO. In both instances, the district court drew an inference of bad faith despite an equally plausible, and likely more reasonable, inference of good faith. Such an analysis has been rejected by this court and is legally erroneous. See Scanner Techs. Corp. v. ICOS Vision Sys. Corp., 528 F.3d 1365, 1376 (Fed. Cir. 2008) ("Whenever evidence proffered to show either materiality or intent is susceptible of multiple reasonable inferences, a district court clearly errs in overlooking one inference in favor of another equally reasonable inference."). The district court's numerous legal and factual errors are discussed in more detail below.

A.

The district court began its cumulativeness inquiry by interpreting the teachings of Robers, the closest prior art on record. Robers is a German patent application that was considered by the examiner during prosecution and is cited as a reference on the face of the '779 patent. As part of its cumulativeness inquiry, the district court considered a portion of the English translation of Robers that TAL submitted to the PTO:

> a process for the production of a pucker free <u>closure</u> seam, in particular for popeline and gabardine materials, wherein a <u>seam</u> of or containing a thermoplastic is sewn into the seam by a method already known, and the part of the material adjoining the seam is then ironed while under slight tension.

During litigation, Esquel submitted a different translation of the Robers patent to aid the district court in interpreting the German reference. After comparing the two translations on remand, the district court found TAL's translation inadequate and held that the inadequacies limited Robers' disclosure. <u>Taltech Ltd. v. Esquel Enters., Inc.</u>, 609 F. Supp. 2d 1195, 1204 (W.D. Wash. 2009).

The district court's analysis is flawed. First, the issue on remand was whether the URS was cumulative of Robers, not vice versa. Thus, it is not apparent what the district court meant when it stated that "the Court would not view the Robers Patent as cumulative." <u>Taltech</u>, 279 F. App'x at 977. Second, while the district court quibbled over the proper translation of several words from German to English, it also noted that "the translators chose different English words having, for the most part, <u>equivalent meanings</u>." <u>Taltech</u>, 609 F. Supp. 2d at 1204 (emphasis added). The art of translation is not precise, and, absent any evidence of intent to deceive, minor variations in submitted translations do not constitute inequitable conduct.

Had the district court properly considered the teachings of Robers, it would have concluded that the URS is merely cumulative of Robers. To determine whether a reference is cumulative of the prior art disclosed to the PTO, this court uses an element-by-element approach to compare the disclosed prior art reference and the undisclosed prior art reference with the claimed invention. See Baxter Int'l Inc. v. McGaw, Inc., 149 F.3d 1321, 1329 (Fed. Cir. 1998). In this case, the undisclosed prior art reference, the URS, has the following elements: (a) a top fabric layer, (b) a bottom fabric layer, (c) a folded strip of adhesive, (d) a set stitch, and (e) a top stitch. Likewise, the disclosed reference, the Robers patent, has the very same elements: (a) a top fabric layer ("2"), (b) a bottom fabric layer ("3"), (c) a folded strip of adhesive ("1"), (d) a set stitch ("4"), and (e) a top stitch ("5").



"Undisclosed Raincoat Seam" (FF-112, JA91)

Robers Figure 3 (JA30125)



FIG. 3 of '779 Patent

Robers, however, also discloses an important element that is not present in the URS. Robers' top stitch passes through the first fabric layer, the strip of adhesive, and

the second fabric layer. Wong testified that this type of top stitch was discovered to be vital in preventing seam puckering in dress shirts. The claimed invention uses a top stitch that passes through both layers of fabric and the strip of adhesive. This element was critical to the success of the claimed invention, yet it is entirely absent from the URS because the URS's top stitch passes through layers of fabric only. Thus, Robers discloses every element that the URS discloses and also discloses the critical top stitch <u>not</u> disclosed in the URS. Accordingly, the URS is merely cumulative and does not support a finding of inequitable conduct. <u>See</u> <u>Halliburton Co. v. Schlumberger Tech.</u> <u>Corp.</u>, 925 F.2d 1435, 1443 (Fed. Cir. 1991) ("[T]he cited references were more pertinent to the Halliburton applications than were the withheld references. Halliburton had no obligation to disclose cumulative references."). The failure by the district court to properly analyze the two references element by element is reversible error.

Moreover, had the district court correctly read the teachings of Robers and the URS in the context of the '779 patent, it would have concluded that Robers is the more relevant reference. The claimed invention is directed to achieving pucker-free seams in dress shirts. Likewise, Robers claims a method of achieving pucker-free seams in dress shirts. Indeed, Robers teaches that its "chief aim" was to provide "seams for garments in which the occurrence of puckers is reliably prevented . . . despite subsequent treatment in the form of repeated laundering and drying." Conversely, as Wong testified, the URS was used only in raincoats. Because the more relevant reference, Robers, was disclosed, Wong's failure to disclose the less relevant reference does not support the district court's inequitable conduct

finding.  See Pro-Mold Tool Co. v. Great Lakes Plastics, Inc., 75 F.3d 1568, 1577 (Fed. Cir. 1996) (finding that less relevant art is not material prior art).

Additionally, in finding the URS not cumulative of Robers, the district court improperly limited the scope of both the URS and Robers.  Turning first to the URS, the district court concluded that the URS was an "armhole seam."  However, there is no evidence whatsoever that the URS was an "armhole seam."  Wong testified that his factory in Thailand made a raincoat seam that had only one top stitch, but he did not testify that such seams were used as armhole seams.  Wong also testified that the TAL plant in Malaysia used different seams for raincoats, one of which had a set stitch and another not having a set stitch.  When Wong sketched the URS at his deposition in 2006, he did not identify it as an armhole seam.  Wong did testify that "the rain coat seams that [he] either took apart or looked at in early 1994" contained a variety of different patterns and stitches and that some were used "in the armhole or around the arm of a rain coat."  But Wong was never asked during the deposition whether the URS, a drawing which he made at the deposition, was an armhole seam.  Furthermore, he never testified that it was.  Nevertheless, the district court improperly limited the URS to an armhole seam of a raincoat, instead of merely a raincoat seam.  The district court failed to understand that the URS was a drawing made during the deposition subsequent to the issuance of the patent, and only in reply to how the inventor was "inspired" to make the invention.  See Taltech, 279 F. App'x at 977.

Furthermore, the majority improperly affirms the district court's flimsy attempt to distinguish the URS as non-cumulative prior art based on the URS's disclosure of a specific type of thermoplastic adhesive, Vilene SL33.  Maj. Op. at 8.  While Robers

discloses an adhesive element, it does not specifically disclose Vilene SL33. However, the district court's materiality finding based on Vilene SL33 is error. Claims 3 and 22 disclose a general type of thermoplastic adhesive, a polyamide, for the garment seams. However, none of claims require Vilene SL33 or any other specific type of thermoplastic adhesive. The examiner considered numerous examples of polyamide adhesives for garment seams in the prior art on record, including Benstock, Swan, Off, and Saniscalchi. Thus, no reasonable examiner would have found the URS's disclosure of Vilene SL33 material because the specific type of polyamide adhesive was not relevant to the examination of the pending claims.

This court has already rejected the argument that the majority now upholds, namely, that an undisclosed reference is material where it discloses a specific element in greater detail than the examiner's cited references. Larson Mfg. Co v. Aluminart Prods., 559 F.3d 1317, 1332-33 (Fed. Cir. 2009). Reversing the finding of inequitable conduct, this court noted that:

> The claim language and limitations at issue require neither a specific type of weather stripping nor a particular retention capability. Rather, the limitations . . . simply require any type of general weather stripping . . . [T]he Panel was not concerned with a particular retention capability. Accordingly, a greater retention capability of weather stripping was wholly irrelevant—i.e., immaterial . . . and could not be the basis of a distinguishing feature to make the [undisclosed prior art reference] and the DE '478 patent not cumulative—i.e., material.

Id. at 1333 (internal citations omitted). The same analysis applies in this case. The examiner was not concerned with any specific type of adhesive. The examiner's focus was the "particular folding steps of the garment parts (or particular positioning of the above parts) with respect to the bonding element," as specified in the '779 patent's

independent claims. Those "particular folding steps" and "positioning" of the elements were not present in either Robers or the URS; thus, the examiner allowed the claims. Accordingly, the specific type of adhesive—Vilene SLL3 or otherwise—was wholly irrelevant, i.e., immaterial, and cannot be a basis for distinguishing the URS as non-cumulative prior art.

Turning to the district court's analysis of Robers, the district court improperly limited the scope of Robers to buttonholes. Yet Robers teaches that his invention "may be used to advantage with closure seams of all types" and is not limited to fastening such as buttonholes, as the district court erroneously found. Robers also teaches that that these closure seams may be used to achieve a "smooth shirt breast" and explains that "the invention may <u>also</u> be used, for example, on one or both sides of a buttonhole for the purpose of reinforcement . . . ." A buttonhole is merely one type of closure contemplated by the patent. Despite this express disclosure, the district court held that Robers' disclosure was limited to buttonholes. The district court's interpretation of the URS and Robers are unreasonable and contradicted by the express teachings of both references.

In sum, Robers discloses a method to achieve "smooth" dress shirt seams, like the claimed invention covering "pucker-free" seams in dress shirts. The URS, on the other hand, discloses seams in raincoats to prevent water from entering the raincoats, not to prevent puckering. Moreover, Robers discloses more elements of the claimed invention than the URS. Robers is the more relevant reference in relation to the claimed invention. Thus, the URS is not material and is merely cumulative of Robers, a reference which TAL disclosed to the PTO during prosecution. Accordingly,

the district court's finding of inequitable conduct based on Wong's failure to disclose the URS is entirely improper and legally erroneous.

The majority also affirms the district court's reliance on a series of immaterial representations made during the prosecution of the '779 patent. Even assuming that the statements regarding the prior art are factually incorrect, none of the statements are material to patentability of the claimed invention.

First, the majority affirms the district court's erroneous reliance on TAL's statement regarding the "double top-stitch seam" found in the prior art. TAL stated in its 1996 Amendment that "two top stitches protruding through the upper garment ply may be acceptable in the seams of heavy raincoats, but it is wholly inadequate for most garments, including dress shirts." The majority finds that statement is "refute[d]" by evidence that a small percentage of TAL's dress shirts included two top stitches. Maj. Op. at 12. The majority assumes, however, that these statements are somehow "material" because "it is not cumulative of other disclosures," despite the fact that the claimed invention does <u>not</u> include two top stitches. <u>Id</u>. Accordingly, the examiner would have had no interest in this representation because it does not impact the patentability of the claimed seams.

Second, the majority affirms another erroneous finding regarding a statement in TAL's 1996 Amendment about prior art "overlock" stitches. Maj. Op. at 12-13. TAL stated that an "overlock stitch . . . is unacceptable in most applications, particularly dress shirts, because it increases the thickness of the seam and is uncomfortable as it rubs a wearer." Again, the majority relies on evidence that some of TAL's dress shirts included the use of an overlock stitch to find that TAL made a

material misrepresentation relating to its claimed pucker-free dress shirts.  Id. at 12.  However, the majority fails to explain how TAL's statement, that a thick overlock stitch was not acceptable for a smooth dress shirt seam, misled the examiner in allowing the claims, none of which includes this type of overlock stitch.  Accordingly, there is no logical factual or legal support for the inequitable conduct finding.

B.

Because I believe that the URS and TAL's representations to the PTO are not material, I need not determine whether TAL intended to deceive the PTO.  See Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1365 (Fed. Cir. 2009) ("[A]t least a threshold level of each element—i.e., both materiality and intent to deceive—must be proven by clear and convincing evidence.").  But, because the majority has approved a deceptive intent finding that lacks any support in law or fact and represents a dangerous departure from our precedent, I will now turn to the district court's intent to deceive analysis.

Conceding it lacked a smoking gun, the district court inferred that TAL intended to deceive the PTO from circumstantial evidence.  Taltech, 609 F. Supp. 2d at 1208.  First, the district court found TAL's disclosure of a raincoat seam with no set stitch and two top stitches, coupled with TAL's representation to the PTO that such a seam is "wholly inadequate for dress shirts," evidenced an intent to deceive.  Id.  According to the district court, intent could be inferred because "[TAL] disclosed only the seam with two top stitches, which he argued was not suitable for his invention, while contemporaneously withholding the seam with only one top stitch [the URS], which more closely approximates the seam used in high-priced dress shirts."  Id.  Yet, it is

undisputed that Robers disclosed a single top stitch. See supra p. 4 (Robers' Fig. 3). Even if the majority and district court believe that the Robers translation was "inadequate," such inadequacy could not have prevented the examiner from understanding Robers' Figure 3 which, whether read in German or English, indisputably contains a single top stitch. Accordingly, the district court inferred intent from the failure to disclose a prior element that was in fact already before the examiner. This establishes not only that the URS was cumulative of Robers, but also that the district court's inference of deceptive intent is unwarranted. See Hebert v. Lisle Corp., 99 F.3d 1109, 1116 (Fed. Cir. 1996) ("Intent to deceive cannot be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent.").

Next, the district court inferred intent from an allegedly "misleading" statement by Wong that he had only recently become aware of the disclosed double top-stitch seam. See Taltech, 609 F. Supp. 2d at 1208. The statement that the district court labeled "misleading" occurred in the 1996 amendment that presented the drawing of the "Disclosed Raincoat Seam" in these words:

> In addition to the current prior art of record, applicant's representative has recently become aware that applicant has made prior sales in the United States of raincoats that incorporate an adhesive structure along a raincoat seam.

According to the district court, Wong "represented to the PTO that he had 'recently become aware' of the Double Top-Stitch Seam (i.e., the 'Disclosed Raincoat Seam'), see Conclusion No. 88 (Docket No. 301)." The district court concluded it was "misleading" for Wong to represent that "he" was only "recently aware" of that raincoat seam because Wong admitted that he learned of the "Disclosed Raincoat Seam" before

2009-1344                                  11

filing his patent application and it was "the very source of his idea to use thermal adhesives in dress shirts."

However, in the context of the amendment, "applicant's representative" clearly referred to the patent attorney, not Wong himself. Wong is the applicant, not the applicant's representative. Wong first told his patent prosecution attorneys in the United States about the "Disclosed Raincoat Seam" shortly before the filing of the 1996 amendment during his visit to the United States. The district court simply misunderstood this scenario. The statement it criticized as "misleading" was not misleading at all; it was entirely accurate. The statement did not represent that Wong himself had "recently become aware" of the "Disclosed Raincoat Seam," and the examiner was not misled.

Nonetheless, the majority contends that the district court "fully grasped the attorney's decision to be intentionally ambiguous about when Wong was aware of the prior sales." Maj. Op. at 15. A cursory reading of the district court's opinion, however, reveals that the district court completely misread the 1996 amendment as referring to Wong's knowledge of the Double Top-Stitch Seam, instead of the patent attorney's knowledge. See Taltech, 609 F. Supp. 2d at 1208 ("[I]n his 1996 amendment, he represented to the PTO that he had 'recently become aware' of the Double Top-Stitch Seam, a statement that was misleading because Mr. Wong was aware . . . before filing his patent application") (emphases added). The majority's attempt to rewrite the district court's opinion fails to correct the blatant legal errors committed below.

Next, the district court cited Praxair, Inc. v. ATMI, Inc., 543 F.3d 1306, 1313-14 (Fed. Cir. 2008), for the proposition that deceptive intent can be inferred when a highly

material reference is withheld without a credible explanation. See Taltech, 609 F. Supp. 2d at 1209. The district court, however, failed to take into account Wong's good faith in introducing the URS into this record. Evidence of good faith must be taken into account in determining intent to deceive. See Larson, 559 F.3d at 1341; Dayco Prods., Inc. v. Total Containment, Inc., 329 F.3d 1358, 1366 (Fed. Cir. 2003).

In this case, Wong voluntarily drew the URS during his 2006 deposition. There is no other evidence of the URS in this record. This voluntary disclosure during litigation provided good faith evidence that Wong believed there was nothing material about the URS and had no intent to hide it. See Rothman v. Target, 556 F.3d 1310, 1328 (Fed. Cir. 2009) ("[Jacobson] did not call the examiner's attention to these garments as prior art, [but had he] intended to conceal the existence . . . from the PTO, he never would have included [the prior art references] in his petitions filings."); Pfizer, Inc. v. Teva Pharms. USA, Inc., 518 F.3d 1353, 1367 (Fed. Cir. 2008) ("Given the existence of a credible reason for the withholding, the materiality of the references standing alone is not sufficient to establish intent."). These inferences of good faith are more reasonable than the district court's unsupported inference of deceptive intent. See Scanner Techs., 528 F.3d at 1377 ("[T]he district court erred when it adopted an unfavorable inference . . . over an equally reasonable favorable inference.").

Moreover, the district court's intent to deceive analysis, and the majority's affirmance thereof, fails to follow our precedent. The majority repeatedly conflates the issues of materiality and intent. See Maj. Op. at 11, 13-14. This approach improperly reads the element of intent to deceive out of our inequitable conduct precedent. See Astrazeneca Pharms. LP v. Teva Pharms. USA, Inc., 583 F.3d 766, 776

(Fed. Cir. 2009) ("Intent to deceive is an independent element of inequitable conduct, and must be independently established by clear and convincing evidence."). While it is true that "when the misrepresentation or withheld information is highly material, a lesser quantum of proof is needed to establish the requisite intent," Purdue Pharma. L.P. v. Endo Pharms. Inc., 438 F.3d 1123, 1129 (Fed. Cir. 2006), some quantum of proof is still necessary. See Allen Organ Co. v. Kimball Int'l, Inc., 839 F.2d 1556, 1567 (Fed. Cir. 1988) ("[M]ateriality does not presume intent, which is a separate and essential component of inequitable conduct.").

In this case, the majority's opinion fails to identify any quantum of proof beyond questionable materiality findings. For example, the majority infers deceptive intent from "TAL's assertion of <u>unequivocal untruths</u> about a reference, simultaneous with presentation of the reference, in order to minimize the reference's impact on the examiner." Maj. Op. at 14 (emphasis added). An inference of deceptive intent may be drawn from an applicant's gross mischaracterization or unreasonable interpretation of the prior art. Young v. Lumenis, Inc., 492 F.3d 1336, 1349 (Fed. Cir. 2007). However, attorneys are entitled to make reasonable arguments regarding the prior art. Rothman, 556 F.3d at 1328-29 ("While the law prohibits genuine misrepresentations of material fact, a prosecuting attorney is free to present argument in favor of patentability without fear of committing inequitable conduct.").

The district court and majority characterize TAL's statements that certain prior art stitches are "wholly inadequate" or "unacceptable" for dress shirts, despite evidence of their inclusion in five percent of TAL's dress shirts, as "unequivocal untruths." Maj. Op. at 14. However, there is an equally reasonable inference that TAL believed

that the prior art stitches are "wholly inadequate" or "unacceptable" and, therefore, incorporated these stitches into only five percent of their shirts on the market. Because TAL's statements support two equally plausible inferences and can be viewed as reasonable attorney argument, the district court and the majority commit legal error by inferring deceptive intent in this situation. Star Scientific, 537 F.3d at 1365 (explaining that an inference of deceptive intent "must be the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard").

In conclusion, the majority's opinion affirms a district court judgment that contains no supportable finding of intent, limited materiality findings, and wholly ignores evidence of good faith. In doing so, the majority reverses the road upon which this court's inequitable conduct precedent is presently travelling. As we recently explained, "[t]he need to strictly enforce . . . [an] elevated standard of proof . . . is paramount because the penalty for inequitable conduct is so severe, the loss of the entire patent . . . . This penalty was originally applied only in cases of fraud on the Patent Office." Id. (internal quotation marks omitted). The district court's finding of deceptive intent is not supported by clear and convincing evidence and the inequitable conduct finding should be reversed. Id.

D.

Because I disagree with the majority's finding of inequitable conduct, I also dissent regarding the majority's findings of exceptionality and the award of attorney's fees. The district court's findings are so clearly erroneous that affirming its determinations causes this court to compound errors occasioned by the district court's

failure to follow this court's precedent. For these reasons, I would reverse the district court, because its conclusions are legally erroneous.